# Trustees of the Philadelphia Museums v. Trustees of the University of Pennsylvania, Appellants.

*Real property—Municipalities—Dedication of municipal property to public purposes—Revocation of grant—Validity—Right of taxpayers—Equity—Setting aside conveyance.*

1. Where a city has dedicated land for public uses and the public has accepted the dedication, the city is thereafter but the conservator of the title in the soil; it has no greater or better right to revoke its grant than a private proprietor would have, and is without authority to sell or convey such land for private purposes.

2. Where a municipality set apart certain real estate owned by it for the health and public welfare of its citizens and by a subsequent ordinance stated that such ground was set aside to be used as a public park forever and for the construction of certain museums and for a botanical and economic garden, and thereafter expended funds for repairing, improving and caring for such grounds and museum buildings, which was followed by the use of the ground and museum by the public, there was a complete dedication and acceptance of the property for public use and the city was estopped thereafter from interfering with or revoking the grant.

3. Where there has been an absolute dedication of land for public purposes by a municipality and such municipality has thereafter appropriated money for the care, maintenance and improvement of at least portions of the land in question, every citizen and taxpayer has an interest in the maintenance of the property for public purposes, not only by virtue of his being a member of the public to

whom the property has been donated, but also by virtue of his contribution as a taxpayer towards the funds which have been used in the improvement thereof, and has a standing in equity to question the validity of a conveyance of the land by the municipality to a private corporation.

4. Where a municipality has dedicated land for the purposes of a public museum, an attempted conveyance of the land in the form of an absolute and immediate grant to a private corporation for its own uses will not be construed merely as the conveyance of the city's reversionary interest in the property, but an attempt to convey the land discharged of the easement of the public therein, and will be decreed to be void at the instance of taxpayers complaining thereof.

Mr. Justice MOSCHZISKER dissents.

Argued Feb. 1, 1915. Appeal, No. 358, Jan. T., 1914, by the Trustees of the University of Pennsylvania, from decree of C. P. No. 1, Philadelphia Co., June Term, 1912, No. 612, for plaintiff on bill in equity to set aside a conveyance and for the cancellation of a deed in case of Board of Trustees of the Philadelphia Museums v. Trustees of The University of Pennsylvania and the City of Philadelphia. Before BROWN, C. J., MESTREZAT, POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Modified and affirmed.

Bill in equity to set aside a conveyance of real estate and for the cancellation of a deed.

Exceptions to the report of Samuel M. Hyneman, Special Master. Before BREGY, P. J.

The opinion of the Supreme Court states the facts. See Trustees of the Philadelphia Museums v. Trustees of the University of Pennsylvania, 251 Pa. 125.

The court dismissed the exceptions. The Trustees of the University of Pennsylvania appealed.

*Error assigned* was in dismissing the exceptions.

*John C. Bell,* and *John G. Johnson,* with them *Henry S. Drinker, Jr., J. Levering Jones* and *Samuel Dickson,*

for appellants.—There has been no irrevocable dedication of the museum properties for museum and park purposes, nor has any action been taken by any person or body in reliance on any such dedication, except perhaps by the State which is not complaining. If the appropriations and contributions to the museum cease, the museums must go out of existence; they are not like a highway or a common which the public may enjoy forever without any one keeping it up: Saxton v. Mitchell, 78 Pa. 479; Gumbert's App., 110 Pa. 496; Slegel v. Lauer, 148 Pa. 236; Lazarus v. Morris, 212 Pa. 128; Board of Commissioners of Mahoning County v. Young, 59 Fed. Repr. 96.

The city owned the fee; the public had but an easement therein, and the city could hold or convey the fee as in its discretion seemed desirable: Fisher v. Coyle, 3 Watts. 407; Ridge Turnpike Co. v. Stoever, 6 W. & S. 378-380; Lance's App., 55 Pa. 16, 25-26; Jessup v. Loucks, 55 Pa. 350; Pittsburgh & Lake Erie R. R. Co. v. Bruce, 102 Pa. 23; Pittock v. Central District & Printing Telegraph Co., 31 Pa. Superior Ct. 589; Scholl v. Emerick, 36 Pa. Superior Ct. 404; Schlessinger v. Mallard, 70 Cal. 326 (11 Pac. Repr. 728) ; Monday v. Vance, 92 Tex. 428; Hale v. Horne, 62 Va. 112.

*Thomas O. Peirce* and *William A. Glasgow, Jr.,* for appellees.—The plaintiff's intervened as individual taxpayers and as such they undoubtedly had the right to maintain this action to prevent any unlawful diversion of any public money or property to a private use: Murray v. Allegheny, 136 Fed. Repr. 57; Sank v. Philadelphia, 8 Philadelphia 117; Laird v. Pittsburgh, 205 Pa. 1.

By this appropriation of money to the museums the city estopped itself from conveying the lands to the appellant: Niles v. Los Angeles, 125 Cal 572 (58 Pac. Repr. 190) ; Pence v. Bryant, 54 W. Va. 363 (46 S. E. Repr. 275) ; Phillips v. Stamford, 81 Conn. 408 (71 Atl. Repr. 361) ; Poole v. Commissioners of Rehoboth, 80

Atl. Repr. 683; Davenport v. Buffington, 97 Fed. Repr. 234; Mayor, Aldermen & Inhabitants of New Orleans v. U. S., 35 U. S. 662; Harding v. Loftin & Jasper, 14 Cal. 642; State v. Trask, 6 Vt. 355, 27 Am. Dec. 554; Abbott v. Mills, 3 Vt. 521, 23 Am. Dec. 222; Morgan v. Chicago & Mississippi R. R. Co., 96 U. S. 716; Cincinnati v. White, 31 U. S. 431.

OPINION BY MR. JUSTICE FRAZER, October 28, 1915:

By ordinance approved July 6, 1883, the City of Philadelphia set apart a portion of the almshouse property in West Philadelphia "for the purpose of being improved for the health and public welfare of the citizens of Philadelphia." June 15, 1894, an ordinance was adopted "for the creation of a board of trustees for establishing public museums and placing in its custody certain educational and economic collections belonging to the city." Section 1 of the latter ordinance provided that the trustees should be composed of the mayor of Philadelphia, president of the board of education, superintendent of public schools, each acting by virtue of his office, a representative of the Board of Public Education and the Park Commission chosen by those bodies respectively, one citizen to be elected annually by each branch of city councils and also certain other individuals named in the ordinance. It was also provided that this board of trustees should "take steps to secure funds and a suitable site for museum buildings to accommodate said collection." Vacancies occurring in the board were to be filled by the mayor, subject to confirmation by select council. The ordinance also provided that certain funds be turned over to the trustees. On June 27, 1895, a further ordinance provided for the immediate opening of a portion (tract "A," Plan 1) of the almshouse tract set apart for park purposes by the ordinance of 1883, which portion was to be conveyed to the trustees of the Philadelphia Museums. After specifically describing the plot by metes and bounds, the first section provides

that the tract "shall be forthwith opened to use as a pub-
lice park forever." Section 2, after reciting the fact
that the city has come into possession of certain collec-
tions which it has placed in the custody of the Board of
Trustees of the Philadelphia Museums sets forth that
the land described in section one "shall be entrusted to
said board of trustees as a site for the museum buildings
to accommodate said collections," with the further pro-
vision that the grounds and museum buildings to be
erected thereon should be "forever open to the free ac-
cess of the public." By ordinance of October 10, 1896,
two additional tracts for the same purpose described in
the ordinance of 1895, and by ordinance of November 22,
1897, three additional tracts of land (Plan 1, "C," "D"
and "E") were set apart and added to those already
granted to the board of trustees for the purpose of de-
veloping and maintaining a botanical and economic gar-
den and public park. This ordinance contained a pro-
vision requiring the garden and park to be forever open
to the free access of the public at all times.

The City of Philadelphia made appropriations for the
care and improvement of these properties at various
times and in 1897 the State of Pennsylvania appropri-
ated the sum of $50,000.00 to the trustees of the Phila-
delphia Museums for the purpose of erecting museum
buildings. In 1898 the United States government, by
the act of Congress, appropriated the sum of $50,000.00
for the purpose of assisting in the collection of samples
of merchandise and business data for the National Ex-
port Exposition held in the year 1899, in the City of
Philadelphia on the property in question and under the
auspices of the Philadelphia Exposition Association, the
samples so collected to become the property of the Phila-
delphia Museums. Section 4 of this act made an appro-
priation of $300,000.00 "to aid in providing buildings
necessary for the purposes of the exposition (said build-
ings to be erected on land set aside by the City of Phila-
delphia for the Board of Trustees of the Philadelphia

Museums and after the close of the exposition to be available for one or more of the various purposes of the Philadelphia Museums Corporation as set forth in its charter), and for the purpose of collecting, installing and caring for" the government exhibits. This appropriation was made on condition that an equal amount be raised from other sources which condition was subsequently complied with by procuring from the City of Philadelphia an appropriation of $200,000.00; from the State of Pennsylvania $100,000.00 and from individual citizens $105,000.00 additional.

By Act of April 25, 1903, P. L. 314, 1 Purd. 277, the city councils of any city were given authority with the approval of the mayor or recorder to establish institutions authorized to collect and hold certain educational and economic collections for the scientific, educational and economic instruction of the public, "said institution to have power to purchase or accept by gift any real estate, money or personal property necessary for their use and promotion, and power to use, convey or transfer the same as if they were bodies corporate, to be governed by boards of trustees, nominated, appointed, and confirmed in such manner as the city councils may determine." Subsequent to this legislation, on March 24, 1904, the ordinance of June 15, 1894, was amended by adding two sections thereto giving the board of trustees power to take and hold any real and personal property necessary for the purposes of the trust and to exercise the general powers and be subject to the restrictions and liabilities prescribed by the Act of 1903.

On June 15, 1910, five ordinances passed by council were approved by the mayor. The first of these repealed section 1 of the ordinance of July 6, 1883, for the reason that the ground referred to had never been improved in the manner contemplated by that ordinance. The second and third repealed the ordinances of 1895 and 1896 respectively for a similar reason but gave the Board of Trustees of the Philadelphia Museums the right to re-

tain the use and possession of the museums grounds and buildings until such time as they should be able to remove their exhibits to another location or until the City of Philadelphia should by ordinance direct such removal. The fourth repealed the ordinance of November 22, 1897, for the reason that the purpose of establishing a botanical and economic garden and public park had never been carried out. The fifth, authorized the sale to the University of Pennsylvania of substantially all the property referred to in the repealed ordinances, with the condition that it should not be sold by the university without the consent of the city. The consideration for the transfer was a ground rent of $1,000 a year, redeemable at any time, at the price of $25,000.00 and 75 free scholarships to be awarded by the mayor of the city to deserving students of the Philadelphia schools. The ordinance, in referring to the plot on which the museums buildings stand, contains a provision that the ground is subject to the right of the Board of Trustees of the Philadelphia Museums to retain the use and possession of the ground and buildings now occupied for the purposes of museums until the board should be able to remove their exhibits elsewhere or until the City of Philadelphia should by ordinance direct such removal. The deed to the university which was subsequently executed and recorded contained a similar provision.

The present proceedings in equity were then instituted by the Board of Trustees of the Philadelphia Museums to set aside the conveyance from the city to the University of Pennsylvania and to have the ordinances of 1910 declared unconstitutional and void on the ground that the ordinance of 1883, and subsequent ordinances, constituted a dedication of the property to the public and that such dedication could not be subsequently revoked by the city. The United States subsequently intervened as a party plaintiff as being one of the contributors to the public enterprise, and certain taxpayers also

intervened as plaintiffs to restrain the alienation of property dedicated to public use.

The answers filed by the City of Philadelphia and the University of Pennsylvania deny the power of the plaintiff trustees to ask for the relief prayed for on the ground that the board of trustees is not an entity distinct from the city and therefore it had no standing to object to any action taken by the city with respect to the property in question. The court below concurred in this view, declaring that the board of trustees was not such a legal entity as to make it sui juris and dismissed the bill as to it (see next case) ; that the United States of America had not sufficient interest in the property to enable it to contest the action of the city and its intervening petition was dismissed (see next case). The court further held that since the city had dedicated the land in question to public use long prior to the sale to the University of Pennsylvania, such sale was entirely beyond its power and the taxpayers and citizens, intervening plaintiffs, had the right to appeal to the courts to set aside such sale. A decree was accordingly entered declaring the various ordinances of June 15, 1910, null and void; that the deed to the University of Pennsylvania was void and should be surrendered for cancellation, and that the land included in the tract on which the museum buildings were situated should be held by the Board of Trustees of the Philadelphia Museums in trust forever for the purposes and uses set forth in the ordinances of June 27, 1895, October 10, 1896, and November 22, 1897. From the decree thus entered all parties have appealed.

With reference to the status of intervening taxpayers if there was an absolute dedication of the land to public purposes, under the various ordinances above referred to, and the city has since that time appropriated money for the care, maintenance and improvement of at least portions of the land in question, every citizen and taxpayer has an interest, not only by virtue of his being one of the public to whom the property has been donated but

also by virtue of his contribution as a taxpayer towards the funds, which have been used in improving the ground. A sale of the property if improper is therefore a question in which taxpayers have an interest and which they have a right to contest: Wolff Chemical Co. v. Philadelphia, 217 Pa. 215; Laird v. Pittsburgh, 205 Pa. 1; Sank v. Philadelphia, 8 Philadelphia 117; Murray v. Allegheny, 136 Fed. Repr. 57.

We thus come to the real question in the case: Whether there is such a dedication and appropriation of this property to public use as will prevent or estop the city from diverting it from such use by conveying it to a private institution? The ordinance of 1883, set apart the property in question for the purpose of being improved for the health and public welfare of the citizens of Philadelphia. The ordinances of 1895, 1896 and 1897, respectively, recite that the ground mentioned therein was set aside to be used as a public park forever and for the construction of museum buildings and a botanical and economic garden. This was not inconsistent with the dedication of the property as a public park: Laird v. Pittsburgh, 205 Pa. 1. In reliance upon such dedication the State of Pennsylvania made various appropriations and the City of Philadelphia appropriated funds at frequent intervals for repairing, improving and caring for the grounds and museum buildings. There was thus not only a setting aside for public use but acts done and funds expended by the city pursuant to such dedication followed by the use of the ground and museum by the public. Such action upon the part of the municipality constitutes a complete dedication and acceptance for public use and estops the city from interfering with or revoking the grant: 3 Dillon on Municipal Corps. (5th Ed.) Secs. 1086 and 1093; Commonwealth v. Rush, 14 Pa. 186; Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Laird v. Pittsburgh, supra; Davenport v. Buffington, 97 Fed. Repr. 234.

The city holds, subject to the trusts, in favor of the

community and is but the conservator of the title in the soil and has neither power nor authority to sell and convey the same for private purposes: Commonwealth v. Rush, supra. Its rights and limitations are clearly defined in Davenport v. Buffington, supra, where it was said on page 238, "We are unwilling to concede that a nation or a state which becomes the proprietor of a town site, plats it, and dedicates its streets and parks to public use has any greater or better right to revoke or avoid its grant or covenant than a private proprietor would have. It may be that either, before any rights have accrued, can revoke the dedication, but, after lots have been sold, after streets have been graded, after parks have been cared for and improved, according to the plat, —in other words, after rights have vested in reliance upon the dedication,—we deny the right of a nation or an individual to revoke it, or to release or destroy the right of the public to the exclusive use of the parks and streets for the purposes for which they were granted. ......A nation, state, or municipality which dedicates land that it owns in the site of a town to public use for the purpose of a park is as conclusively estopped as a private proprietor from revoking that dedication, from selling the park, from appropriating the land which it occupies to other purposes after lots have been sold, after the town has been settled, and after the park has been improved with moneys raised by the taxation of its residents and taxpayers in reliance upon the grant and covenant, which the dedication evidences."

It is contended by appellants that even admitting there has been an irrevocable dedication to the public, there has been no violation or intent to violate the rights of the public in the property, for the reason that a reversion remains in the city in the event of the abandonment of the property for the purposes intended and that only this reversion has been conveyed in the grant to the University of Pennsylvania. It is not necessary to discuss here the question of the right of a municipality to

convey a reversionary interest in property which it has forever dedicated to a public use and on which public funds have been spent in improvements since the deed in question does not purport to be a conveyance of a reversionary right, but is in form an absolute and immediate grant, subject only to the limitation as to possession of the part of the premises on which the museums buildings stand until the museums can be moved or until they are ordered to be moved by the city. So long at least as the property and buildings occupied by the museums continue to be used for that purpose in good faith, the city is without power to alienate the property and thus interfere with its prior appropriation or dedication to public use.

The decree of the lower court is modified by directing that the property occupied by the museums buildings and appurtenant thereto, and referred to as "Tract No. 3" shall be held by the trustees so long as the land and buildings are in good faith used for the purposes of the museums. In other respects the decree of the lower court is affirmed.

Mr. Justice MOSCHZISKER dissents.