## Owens v. Borough of Hawley

*A. Emerson Howell, Victor A. Decker, 3rd,* and *Kravitz, Gumble & Sigal,* for plaintiffs.

*I. Reines Skier,* for defendants.

RUTHERFORD, P. J., June 24, 1964.—This matter comes before the court on the complaint of Hobart N. Owens, and others, residents of the Borough of Hawley, plaintiffs, wherein they seek to enjoin the members of the Hawley Borough council from erecting a municipal building on what is known as "Bingham Park" in the Borough of Hawley.

Bingham Park was acquired by the Borough of Hawley from Adelbert M. Bingham, et ux., as evidenced by the deed dated March 15, 1929, in which a substantial portion of land was remised, released and quit-claimed to the Borough of Hawley "upon the express understanding and condition that the same shall be used for the purpose of a public park, for street purposes, and for other public purposes and for no other purposes whatsoever, and if the whole or any part thereof shall be diverted to any other use, the title to the premises herein described shall thereupon immediately revert to said parties of the first part, their heirs, executors, administrators and assigns."

The proposed municipal building would be one story in height and occupy an area of approximately 3,500 square feet. The floor plans show that at one end a space will be available for two fire trucks, fire fighting equipment and an ambulance. The remainder of the building would be occupied by a council meeting room, borough secretary and borough treasurer's office, a shower room and small kitchen. The office would serve as a working quarters for the secretary and treasurer of the. borough as well as other borough officials and for storage of the borough records. The council room would be available for meetings of the borough council and for the meetings of any other organization which the borough council deemed appropriate.

The testimony produced indicated that the area allocated for the storage of the two fire trucks, fire fighting equipment and ambulance would be subject to borough regulation but primarily under the control of two volunteer fire companies, both of which were incorporated as nonprofit organizations by the Court of Common Pleas of Wayne County, with membership restricted to those persons duly elected thereto under the articles of incorporation and bylaws governing the same.

Plaintiffs contend that the erection of such a building would be in violation of the restrictions set forth in the deed of Adelbert M. Bingham, et ux., to the Borough of Hawley and as such would cause the entire parcel known as "Bingham Park" to revert to the grantors, their heirs, executors, administrators and assigns. The injunction sought is to prevent an act on the part of the borough council which would result in the forfeiture of this substantial property dedicated to public use. The means by which the plaintiffs seek to do this is proper, as indicated by the decision of the Pennsylvania Supreme Court in the case of Bernstein v. Pittsburgh, 366 Pa. 200, page 205, wherein Mr. Justice Horace Stern, speaking for the court states:

"May this open-air auditorium be built on the land conveyed to the city by Mary E. Schenley? If it does not come within the scope of the express purposes for which the land was deeded the project must, of course, fall— a question that may properly be raised by a taxpayer's bill to enjoin the carrying out of the enterprise and to compel the use of the park in strict accord with the objects of its dedication."

The main question before this court is whether or not the erection of the proposed municipal building to be used as municipal offices and housing for equipment of two volunteer fire companies violates the restriction contained in the deed of acquisition.

Although restrictions are ordinarily construed strictly against the grantor such is not the case where land is conveyed to a municipality for specific public purposes; in which case the terms of the grant must be narrowly construed and the uses to which the land may be put correspondingly restricted. See Bernstein v. Pittsburgh, supra.

An analysis of the phraseology employed by the grantor would indicate that the primary purpose for which the land was given was for the purpose of a public park. It is important to note the use of the word "shall" rather than "may," wherein the grantor states "that the same *shall* be used for the purposes of a *public park.*" The grantor then continues "for street purposes, and for other public purposes and for no other purposes whatsoever."

Since there is a definite direction that the property shall be used for the purposes of a public park, the phrases "street purposes and for other public purposes" must necessarily be construed as additional uses not inconsistent with the property's primary use as a public park. We are also of the opinion that the grantors herein are concerned with use and enjoyment of the land by the general public, rather than for a purpose which might be considered a public benefit.

Although there is considerable authority in Pennsylvania for the construction of various and sundry facilities on land dedicated for use as a public park, wherein the facilities by their very nature can not be enjoyed by all members of the public simultaneously and in many instances cannot be enjoyed without the payment of a fee or admission charge, we know of no case in which the courts have permitted the creation of facilities that are not open to all members of the public upon the same terms and conditions and where the facilities while publicly owned are to be restricted in actual use to those whose municipal duties or functions

require them to so do. Bandstands, tennis courts, baseball fields, municipal auditoriums, free public libraries, restaurants, eating stands and amusement devices are all for the convenience, entertainment and pleasure of the public. We can conceive of many publicly owned facilities rendering a beneficial public service which would clearly fall outside of the grantors' intended use. A garbage disposal plant, sewage disposal plant, trash incinerator, municipal asphalt plant, highway material storage area, municipal gas plant and many other facilities for rendering like service would be of public benefit yet could be said to be within that type of use to which the dedicated land is intended. The proposed structure although not so clearly outside the meaning of those purposes set forth in the deed, nevertheless falls more within the prohibited category than it does within the class of those facilities thus far adjudicated as being within the definition of "park purposes."

The fact that only a small portion of the land contained in the Bingham Park would be used for the erection of the municipal building is not to be given much weight in our present decision. The language of the restriction clearly states "if the whole or any part thereof shall be diverted to any other use, the title to the premises herein described shall thereupon immediately revert." Thus, we are concerned only with whether or not the proposed building will divert any part thereof to any other use. The same threatened forfeiture results for partial violation as for total violation of the restriction.

For the above reasons we are of the opinion that the proposed structure would not come within the meaning of "other public purposes" but would be in violation of the restriction and thus work a forfeiture of the land described in the deed.

We are not entirely dependent upon the above reason, however, to impose an injunction. The very name

of the plot in question, "Bingham Park," and the uses to which it has been put indicate clearly that the land has been dedicated by the Borough of Hawley and received by the public as a public park. Having dedicated the land as a public park and the public having accepted the same as such, the municipality can not revoke or destroy the right of the public to the exclusive use of the property for the purpose designated. In Easton v. Koch, 152 Pa. Superior Ct. 327, at page 338, Judge Rhodes, speaking for the court said:

"The property had been dedicated and was maintained by the city for a public park, which may be comprehensively defined as a public pleasure ground which affords pleasure to the eye as well as opportunity for open air recreation. See Laird v. Pitsburgh, et al., 205 Pa. 1, 5, 54 A. 324; 3 McQuillin, Municipal Corporations, 2d Ed., §1255, p. 772. A municipality cannot revoke or destroy, after dedication and acceptance, the right of the public to the exclusive use of the property for the purpose designated."

In Philadelphia Museums v. Trustees of the University of Pennsylvania, 251 Pa. 115, at page 124, Mr. Justice Frazer quotes with approval Davenport v. Buffington, as follows:

"We are unwilling to concede that a nation or a state which becomes the proprietor of a town site, plats it, and dedicates its streets and parks to public use has any greater or better right to revoke or avoid its grant or covenant than a private proprietor would have. It may be that either, before any rights have accrued, can revoke the dedication, but, after lots have been sold, after streets have been graded, after parks have been cared for and improved, according to the plat,—in other words, after rights have vested in reliance upon the dedication,—we deny the right of a nation or an individual to revoke it, or to release or destroy the right of the public to the exclusive use of the parks and streets

for the purposes for which they were granted. . . . . . .
A nation, state, or municipality which dedicates land that it owns in the site of a town to public use for the purpose of a park is as conclusively estopped as a private proprietor from revoking that dedication, from selling the park, *from appropriating the land which it occupies to other purposes* after lots have been sold, after the town has been settled, and after the park has been improved with moneys raised by the taxation of its residents and taxpayers in reliance upon the grant and covenant, which the dedication evidences." (Italics supplied.)

For the above reasons the Borough of Hawley, together with its agents, servants and employes is hereby perpetually and permanently restrained and enjoined from building and constructing a borough hall and fire house upon the premises set forth in schedule "A," attached to the complaint, and known as "Bingham Park." . . .