Richard H. POLLOCK and Florine B. Pollock, Frederick T. Johnson and Pearl B. Johnson, Walter W. Spencer and Margaret C. Spencer, Robert H. Nelson, Michael Mandio and Nancy B. Mandio, Ellason Downs and Molly Laird Downs, Plaintiffs,

v.

Russell W. PETERSON, Governor of the State of Delaware, and David P. Buckson, Attorney General of the State of Delaware, Defendants,

v.

DEPARTMENT OF HEALTH AND SOCIAL SERVICES, Intervenor.

In the Matter of the WILL of John FERRIS, Deceased.

Court of Chancery of Delaware,
New Castle.

April 16, 1970.

------

Charles F. Richards, of Richards, Layton & Finger, Wilmington, for plaintiffs Richard H. Pollock et al.

Jerome O. Herlihy, Wilmington, for defendant Russell W. Peterson, Governor of State of Delaware.

Brian P. Murphy, Deputy Atty. Gen., for defendant David P. Buckson, Atty. Gen. of State of Delaware.

Gerald C. Foulk, Deputy Atty. Gen., for Department of Health and Social Services.

MARVEL, Vice Chancellor.

The original plaintiffs in this consolidated action sue as a class on behalf of all of the citizens of the State of Delaware. They seek injunctive relief against the proposed conveyance to an executive department of the United States, namely the Department of Housing and Urban Development, of State held lands. Their complaint named as defendants the Governor of the State of Delaware, George Romney, Secretary of the Department of Housing and Urban Development of the United States, the Department itself, the United States, and the Attorney General of Delaware. While the complaint alleges that plaintiffs and all other citizens and taxpayers similarly situated will be irreparably injured if the transaction complained of is consummated, no specific charge is made as to how federal or state moneys would be wasted should the project here under attack be consummated. The federal defendants, having represented to the Court that they have made no commitment to the State concerning acquisition of any part of the lands in question, such named parties have been dismissed from the action.

The original complaint, as noted above, seeks relief against the conveyance of State owned lands for use in a federally sponsored housing project, the theory of such complaint being that its proponents are allegedly acting to enforce the terms of a public charitable trust arising under the terms of the will of John Ferris, which trust provisions, plaintiffs claim, would be violated were any of such lands to be converted to what, it is contended, would be a non-trust purpose. Thus, the specific use to which the lands in question may be put would appear to be immaterial, the ultimate question being whether or not trust property now consisting of real estate and chattels may be converted in part to cash or its equivalent.

Said testator left the residue of his estate to Caleb Harlan, M.D. in trust to be applied.

" * * * for the benefit of any of the necessitous portion of the human family that may come to his knowledge, either directly or indirectly by the agency of such institution as he may select, hereby giving him full authority, to use the same as he may deem best * * * I might suggest that the application of said residue, or a portion thereof to and in establishing what is known mostly as a House of Refuge or a place for bettering wayward juveniles, would have my approval, should there be a probability of having established in this vicinity in reasonable time, such an institution * * ".

The Pollock plaintiffs and other residents of the area near the Ferris School, an institution for the detention and rehabilitation of delinquent boys, founded as a result of Dr. Harlan's efforts, contend that regardless of what is done with the proceeds of a sale of part of the Ferris lands, a conversion of any part of the Ferris tract to a purpose unrelated to the betterment of wayward juveniles would constitute a misuse of trust assets. They claim to have standing to bring this action to enforce the Ferris trust. Compare Richardson v. Blackburn, 41 Del.Ch. 54, 187 A.2d 823, in which the Attorney General refused to sue.

Having accumulated sufficient residuary funds in the Ferris estate, the named trustee, one Caleb Harlan, M.D., in 1883, decided to establish the type of home for boys suggested by Mr. Ferris in his will, and purchased some 190 acres of farmland in Christiana Hundred on which the present Ferris school now stands. Such lands and others were then conveyed by Dr. Harlan to a corporation known as Ferris Reform School. This corporation continued to own the lands in question and to operate a boys school there until 1919 when title to the land in question was conveyed to the State of Delaware, "In Trust however to continue to maintain and operate the said property and the School located thereon, in accordance with the purposes for which this grant was established and in conformity with the trusts established under and by virtue of the will of John Ferris."

The State thereafter took over operation of the school, the conveyance above referred to being the sequel of the adoption of an act of the Legislature authorizing the acceptance of such tender under the condition that " * * * the State of Delaware will continue to maintain and operate said school, in accordance with the purposes for which said corporation was established and in conformity with the trust hereinabove referred to." Such statute further provided that " * * * Said property when received by the State of Delaware and all of the income and increments thereof shall be used for the maintenance of a Reform School, in accordance with the purposes of said Ferris Industrial School and in conformity with the Trust established by the Trustee of John Ferris * * * ". Said statute also made provision for a separate State treasury account for the school and established a board of five trustees to operate what the statute named the Ferris Industrial School of Delaware.

Thereafter, in 1957, again by act of the Legislature, (51 Laws of Delaware, Chapter 274), the Youth Services Commission was created and invested with powers to operate all State owned training facilities for juvenile delinquents as well as detention facilities for juveniles, thus taking over, inter alia, responsibility for the operation of the Ferris Industrial School and displacing the former individual trustees as managers of such institution.

Finally, on November 5, 1969, the Governor approved an act of the Legislature which established a Department of Health and Social Services, (57 Laws of Delaware, Chapter 301). Such legislation created a number of divisions in such department, including a Division of Corrections, which, inter alia, has been vested with power to administer and the responsibility for the performance of all powers and functions heretofore performed by the Youth Services Commission, Title 29 Del. C. § 7916.

The defendant Russell W. Peterson has proposed to the Department of Housing and Urban Development of the United States that it acquire a part of the Ferris lands hereinabove referred to as a site for the carrying out of a revolutionary housing project which promises to appeal to persons of diverse economic means by circumventing the rules and regulations presently impeding the financing and construction of non-uniform housing units. However, the defendant Russell W. Peterson, through his attorney of record as well as by affidavit, has assured the Court that the judicial approval sought for such proposed conveyance is being made with such defendant's express assurance that if the proposed sale is approved, the price to be fixed for the 97 acres involved in the project will be based on an impartial appraisal of the value of such lands, and further, that the moneys received in return for such conveyance, should the proposal be consummated, will be devoted exclusively to the needs of the Ferris School and its inmates.

A number of motions are before the Court for decision, including that of the defendant Russell W. Peterson to have the Pollock plaintiffs and other residents of

the area here involved dismissed as parties to this consolidated action, the motion of the Youth Services Commission to dismiss the Attorney General's complaint, and the motions of the Department of Health and Social Services to be made a party to this action as well as to be substituted for what it contends is now the Youth Services Council as opposed to the former Youth Services Commission.

Finally, the defendant Russell W. Peterson, contending that there are no material factual issues to be resolved by this Court, has moved for the entry of an order to the effect that the issue of trust law presented by the proposed use of Ferris lands for a unique form of housing be certified to the Supreme Court of Delaware, there allegedly being, as noted above, no material issues of fact which would militate against such a certification.

Following the filing of the original action, the Attorney General of Delaware, who had been named a defendant in such earlier suit, filed his own complaint in which he prayed for instructions as to whether or not the sale of Ferris School lands to the federal government for use as an experimental housing site would result in a conversion not contemplated in the Ferris trust, and, if so, would a proposed act of the Legislature authorizing such a sale increase and make more flexible the State's power vis à vis such trust property.

Turning first to the respective contentions of the Youth Services Commission and those of the Department of Health and Social Services, I am satisfied that while the former agency continued to be endowed with the authority to maintain the Ferris School property until March 16, 1970, (having been made a party to this proceeding by an oral order of March 11), as of the former date an executive order of the Governor made effective the terms of 57 Laws of Delaware, Chapter 301, thereby bringing into being a Department of Health and Social Services. Whereupon, the powers, duties and functions heretofore vested by statute in the Youth Services Commission were transferred to a Division of Corrections of the Department of Health and Social Services.

Counsel for the former Youth Services Commission argues that such transfer has not, in fact, been effected because a Director of the Division of Corrections has not been appointed. I am of the opinion, however, that the naming of such a director is not a prerequisite to the effectiveness of the new statute and it would appear that the Department is functioning. More significantly, I find nothing in the act to support counsel's contention. Accordingly, I conclude that the former Youth Services Commission is now merely the Council on Youth Services with power to serve solely in an advisory capacity to the Director of Corrections.

Counsel for the Pollock plaintiffs additionally contends that while the terms of 57 Laws of Delaware, Chapter 301 have caused the Division of Corrections to succeed to those powers of the Youth Services Commission set forth in Title 31 Del.C., Chapters 51 and 52, that the Youth Services Commission in fact derives its authority to serve as trustee of the Ferris trust from the provisions of 30 Laws of Delaware, Chapter 149. However, Title 29 Del.C. §§ 5101 and 5102 (Chapter 51), as of 1953, were derived from 30 Laws of Delaware, Chapter 149, and by the terms of 51 Laws of Delaware, Chapter 274, the functions formerly performed by the five Ferris trustees were entrusted to the Youth Services Commission. Accordingly, when the Division of Corrections succeeded to the powers and functions of the Youth Services Commission, such division, not its director to be, became trustee of the Ferris trust.

The motion to dismiss the Youth Services Commission as a party hereto is granted, and it necessarily follows that leave will be granted to the Department of Health and Social Services to intervene as a party to this proceeding. By the same token the motion of the Youth Services Commission

to dismiss the complaint of the Attorney General must be denied inasmuch as the Department of the Health and Social Services takes the position that the proposed sale of a part of the Ferris School lands and the application of the proceeds of such sale for the use of such school would be consistent with the provisions of the Ferris trust.

Finally, the defendant Russell W. Peterson has moved to dismiss the complaint of the Pollock plaintiffs on the ground that they lack standing to sue as taxpayers, inasmuch as they are neither trustees of the Ferris trust nor beneficiaries of such trust in that they have no special interest therein. Furthermore, according to counsel for Mr. Peterson, such plaintiffs have no standing to seek the enforcement of covenants of which they are not direct beneficiaries or to sue the Governor in his official capacity without the consent of the State.

■ It is generally recognized that the appropriate person to enforce the provisions of a charitable trust is the Attorney General. As stated in Bogert on Trusts (2nd Ed.), § 411:

> "Since the Attorney General is the governmental officer whose duties include the protection of the rights of the people of the State in general, it is natural that he has been chosen as the protector, supervisor, and enforcer of charitable trusts both in England and in the several states * * *".

> "The purpose of vesting in some public official like the Attorney General the exclusive power to begin proceedings to enforce charitable trusts is obvious. The persons affected by such trusts are usually some or all of the members of a large shifting class of the public. If any member of this class who deemed himself qualified might begin suit, the trustee would frequently be subjected to unreasonable and vexatious litigation. Often no given individual can prove that he will necessarily benefit from the charity."

■ The resident and land owning plaintiffs are clearly not of that special class of trust beneficiaries who have standing to sue for their own special interest. In point of fact they admittedly sue for all of the citizens of Delaware. Accordingly, they do not, in my opinion, have standing to sue here, Restatements of the Law of Trusts, § 391, and Bogert on Trusts (2nd Ed.) § 411, supra. Furthermore, those plaintiffs who may own land abutting the Ferris lands do not claim any easement or the like in such trust property. See 26 C.J. S. Dedication § 71. And it cannot be assumed that the housing project here proposed will constitute a nuisance, Nichols v. City of Rock Island, 3 Ill.2d 531, 121 N.E. 2d 799.

In other words, this is not a case of a trust which is charitable in a narrow sense such as having certain identifiable persons designated as its beneficiaries (though such a trust may be of some benefit to the public at large), which definitely ascertained class of persons has a status to sue without the intermediation of the Attorney General. As stated in Cannon v. Stephens, 18 Del.Ch. 276, 159 A. 234, in which such a situation was found to exist.

> "In such cases the reason for the rule that the attorney general must sue, viz, that there is no one among the indefinite public who can assert himself to be peculiarly interested as distinguished from others, finds no justification in fact. The reason failing, the rule should fall. In order for the attorney general to be alone entitled to enforce a charitable trust there must be * * * some benefit to be conferred upon, or duty to be performed towards, either the public at large or some part thereof, or an indefinite class of persons."

Next, I am of the opinion that the defendant Peterson is not threatening to effect the commission of an illegal act, in that he is content first to seek Court approval of the transaction in issue and then to seek the consent of the Legislature to such proposed sale before it is consummated. Conse-

quently, cases such as Claus v. Babiarz, 40 Del.Ch. 500, 185 A.2d 283, in which no charitable trust was involved, are not in point.

The land owning plaintiffs, however, cite the ruling of this Court in Anderson v. Mayor and Council, 37 Del.Ch. 74, 137 A. 2d 521, in which taxpaying plaintiffs were permitted to sue to enjoin the City from selling a portion of public parkland to the Board of Public Education, the lands involved being found to be held in trust for the public as parkland. The Attorney General was not joined as a party, and plaintiffs' standing to sue was not contested, defendant having conceded such point, apparently because plaintiffs had taken the position that the complained of transaction, if consummated, would be illegal. The Court agreed that plaintiffs' right to sue was well established under the facts alleged, Fetters v. Mayor and Council, 31 Del.Ch. 338, 73 A.2d 644. Significantly, while it was alleged that the proposed sale, if consummated, would be illegal, no clue is found in the opinion as to what the City proposed to do with the proceeds of the contemplated sale should it be authorized, a question which has been answered in the case at bar. See Annotation in 17 A.L.R. 2d 475. Furthermore, legislative approval is contemplated in the present case which was not the case in the Anderson case. Had such approval been granted, a different result might well have been reached. Compare Drexler v. Commissioners, 15 Del. Ch. 214, 135 A. 484. Finally, the Board of Park Commissioners, the agency charged with the control and care of the parklands in question, was opposed to the proposed sale and had standing to intervene had plaintiffs' right to seek injunctive relief against the alleged threat of illegal action been successfully questioned. See Holt v. College of Osteopathic Physicians and Surgeons, 61 Cal.2d 750, 40 Cal.Rptr. 244, 394 P.2d 932.

As noted earlier in this opinion, the parties hereto concede that the Attorney General is usually a necessary party to an action having to do with the existence or administration of a charitable trust, Carlisle v. Delaware Trust Company, 34 Del.Ch. 133, 99 A.2d 764. Where differences arise here as between the land owning plaintiffs and the defendant Peterson is as to how an adversary proceeding may be established in a situation, such as the one at bar, in which the Attorney General, having been named a defendant in the landowners' suit, and also having filed his own action, takes a neutral position as to future use of the Ferris School lands.

In view of the Court's ruling that the land owning plaintiffs have no standing to sue here, the answer to this problem would appear to lie in the approach taken by the Chancellor in the case of Bank of Delaware v. Buckson (Del.Ch.) 255 A.2d 710, a charitable trust case in which the Attorney General took no active part. In other words, as I see it, this case not being one concerned with inappropriate official conduct such as the improper placing of bids, Claus v. Babiarz, supra, the flaunting of a public ordinance, Board of Trustees of Philadelphia Museums v. Trustees of U. of P., 251 Pa. 115, 96 A. 123, or one in which Congressional action in allocating federal moneys for instruction in religious schools is claimed to be in violation of the First Amendment of the Constitution of the United States, Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947, but rather one concerned with an issue of local trust law, namely whether or not a trustee of a public charitable trust may convert a portion of trust property from realty to personalty and then apply the latter to trust purposes, the most that the present opponents of such conversion are entitled to, in my opinion, is to have their position developed by a friend of the Court. Accordingly, as in Bank of Delaware v. Buckson, supra, adverseness will be established here by appointing the land owning plaintiffs' counsel as amicus curiae. If necessary, an application can be made by such officer to have such powers conferred on him as may be necessary for him fully to advance the

reasons why a conversion of part of the Ferris lands to cash would constitute a breach of such trust.

■ Next, the defendant Peterson has petitioned for certification to the Supreme Court of Delaware of the questions of law stated in the complaint of the Attorney General, it being contended that the question ready for decision, namely whether or not a part of the State lands here in issue may be sold to the Department of Housing and Urban Development does not involve any material questions of fact. And in the sense that such contention is made on the basis of the fact that the Department of Health and Social Services has succeeded to the duties of the Youth Services Commission and is of the opinion that part of the Ferris land is not in use and will not be in use in the forseeable future, and so may be sold without violating the trust, I am inclined to agree. However, it is not established on the present record exactly what lands are proposed to be sold to the Department of Housing and Urban Development, what is the price to be paid for such lands, and exactly how the moneys to be received in exchange for lands to be sold will be beneficially applied to Ferris trust purposes.

Were it not for the existence of the factual issues such as those outlined above, I would be of the opinion that the sole question of law before me for decision would be whether or not a part of the State lands on which the Ferris School stands may be sold to the Department of Housing and Urban Development and the proceeds devoted to Ferris trust purposes. This question, which involves the express or tacit powers of a trustee to convey trust property, is not one of first instance in this State. See Delaware Land and Development Company v. First & Central Presbyterian Church, 16 Del.Ch. 410, 147 A. 165, and Trustees of New Castle Common v.

Gordy, 33 Del.Ch. 334, 93 A.2d 509. In the exercise of my discretion I decline to certify the question above stated to the Supreme Court of Delaware.

On notice an order [1] may be submitted, (1) dismissing as plaintiffs the Pollocks and those residents who joined them in filing the original complaint herein, and (2) denying the defendant Peterson's motion for certification.

---

1. An order dismissing the Youth Services Commission as a party and substituting in its stead the Department of Health and Social Services was entered on April 13, 1970.