Kenneth MASTEN, Plaintiff,

v.

STATE of Delaware and Department
of Correction, Defendants.

Superior Court of Delaware,
New Castle County.

Submitted: Jan. 11, 1991.
Decided: Dec. 9, 1991.

David C. McBride, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff Kenneth Masten.

John J. Polk, Deputy Atty. Gen., Dept. of Justice, for defendants State of Del. and Dept. of Correction.

## OPINION

HERLIHY, Judge.

Presently before the Court are cross-motions for summary judgment. The issue in these motions is whether or not the State of Delaware [State] waived sovereign immunity in connection with the operation of the Ferris School. Kenneth Masten [Masten] claims there has been a waiver and that the State is liable to him. The State argues that there has been no waiver, consequently there is no liability.

### BACKGROUND

On October 20, 1979, Masten was a resident of Ferris School which is basically a detention center for male juvenile delinquents. On that date, Masten alleges he and some other minors were left unsupervised in a locked recreation room. Two of the minors are claimed to have started a fight when a object was thrown, striking Masten in the left eye causing permanent blindness.

Masten filed his claim in this Court on June 5, 1981. The State moved to dismiss on the grounds of sovereign immunity and this Court granted Masten's request to certify the issues to the Supreme Court. In a decision dated August 20, 1981, the Supreme Court declined to accept certification. Thereafter, briefing on the State's motion was completed and this Court granted the State's motion. *Masten v. State*, Del.Super., C.A. No. 81C–JN–40, Stiftel, P.J. (August 31, 1983). Masten appealed that decision to the Supreme Court.

That appeal was stayed until this Court's decision in a companion case, *Doe v. Cates*, Del.Super., 79M–MR–1. Ultimately, the Supreme Court consolidated the appeals in this case, *Doe* and three other cases.

In *Doe v. Cates*, Del.Supr., 499 A.2d 1175 (1985), the Supreme Court affirmed this Court's decision in four cases. The Supreme Court said the issue in all five cases was basically the same: "Does the State of Delaware continue to have the right to assert its sovereign immunity as a valid defense to a tort action brought against the State were the State has failed to provide itself with insurance protection?" *Doe*, 499 A.2d at 1176. The Supreme Court answered its question by holding that the State did have a right to assert sovereign immunity. *Id.* at 1181–82. It did note, however, that Masten raised two claims not raised by the other four plaintiffs. One was whether the State had obtained insurance for its operation of Ferris School. The Court noted that Masten had sought, but this Court did not give, the opportunity for discovery on this issue. *Id.* at 1183.

Masten's other unique claim was:

[T]hat the State has specifically waived sovereign immunity with respect to its operation of Ferris School because of the legislation under which the school was taken over by the State, the charter of the school, and the trust established under the will of John Ferris.

*Doe*, 499 A.2d at 1183. The Court noted that Masten had not raised this claim in this Court and remanded *Masten* for further proceedings on both issues. *Doe*, 499 A.2d at 1183–84.

Further discovery was undertaken upon remand, albeit at a leisurely pace. Ultimately this case was specially assigned to this judge who requested in 1990 a status report from counsel. Thereafter, Masten renewed his motion for summary judgment and the State filed its cross-motion for summary judgment.

Masten raises several arguments why the State has waived sovereign immunity. First, he argues that the original corpora-

tion set up to operate Ferris School was authorized by the General Assembly to sue and be sued. When the State took over Ferris School, it accepted those powers. Second, Masten argues the juveniles at Ferris School are trust beneficiaries and are contractually able to bring suit. Third, Masten claims that the State does not have insurance for Ferris School residents but does have insurance for adult inmates and public school children. This, he contends, violates his right to equal protection and, therefore, he should be entitled to recover.

The State counters by saying there has been no waiver, the right to sue and be sued was not "assumed" by the State and statutory and constitutional authority make it immune. It contends Masten raises the beneficiary claim for the first time and that it comes too late. The State also argues that Masten's equal protection argument was rejected by the Supreme Court in *Doe* [1].

Because the Court finds that the State has waived immunity in its operations of Ferris, it is unnecessary to reach the balance of the parties' contentions.

## STANDARD OF REVIEW

When cross-motions for summary judgment are filed, as here, the Court must consider whether there is a genuine issue of material fact presented. *State ex rel Mitchell v. Wolcott*, Del.Supr., 83 A.2d 759 (1951). Only where no such issues of fact exist and one of the moving parties is entitled to judgment as a matter of law may the Court grant one of the motions. *Empire of America v. Commercial Credit*, Del.Supr., 551 A.2d 433 (1988).

## FACTS

In a will dated March 20, 1874, John Ferris established a trust in the residuary clause with his cousin Dr. Caleb Harlan as trustee. The purpose of the trust was:

[F]or the benefit of any of the necessitous portion of the human family that may come to his knowledge, either directly or indirectly by the agency of such

1. *Doe*, 499 A.2d at 1182.

institution as he may select, hereby giving him full authority, to use the same as he may deem best.... I might suggest that the application of said residue, or a portion thereof to and in establishing what is known mostly as a House of Refuge or a place for bettering wayward juveniles, would have my approval, should there be a probability of having established in this vicinity in reasonable time, such an institution....

*Pollock v. Peterson*, Del.Ch. 271 A.2d 45, 46 (1970).

In 1883 Dr. Harlan purchased 190 acres of land to carry out the wishes of Mr. Ferris. *Pollock*, 271 A.2d at 47. That land is the site of the current Ferris School and other youth detention facilities. In 1885, the General Assembly incorporated the Ferris Reform School. 17 *Del.Laws*, Ch. 495. Dr. Harlan was one of the [in]corporators. *Id.* at § 1. Under the Delaware Constitution of 1831, the legislature passed acts of incorporation. Article II, § 17.

Among the powers conferred upon the corporators were the powers "to sue and be sued, implead and be impleaded in all courts of law and equity". *Id.* at § 1. The act of incorporation provided for a board of twenty-one managers who would manage the "estate and concerns of said corporation". *Id.* at § 3.

In 1889 the General Assembly amended the name of the prior corporation to the Ferris Industrial School. 18 *Del.Laws*, Ch. 546. That act further stated that the renamed corporation "shall be entitled to and shall hold, exercise and enjoy all the property, rights, powers, privileges, franchises and immunities now and heretofore held and enjoyed by said corporation in any manner whatever." *Id.*

In 1898 the legislature mandated that the Levy Court of New Castle County pay the Ferris Industrial School for care of juveniles. 21 *Del.Laws*, Ch. 74. This legislation was declared constitutional under the then new provision of the 1897 Constitution, Article IX, § 1 which prohibited special acts of incorporation except for penal, reformatory or educational purposes. *State v. Levy Court*, Del.Super., 43 A. 522

(1899). The General Assembly further amended the 1885 act of incorporation. In 1901 a provision was made for the Court of General Sessions in Kent and Sussex Counties to commit juveniles to Ferris Industrial School. 22 *Del.Laws*, Ch. 133. In 1905 several other changes were made. 23 *Del. Laws*, Ch. 118, 23 *Del.Laws*, Ch. 119.

As noted, the Ferris Reform School was incorporated in 1885 under the 1831 Delaware Constitution. Article II, § 17. Corporations so incorporated were given a twenty-year existence under that provision. Therefore, in 1905, the legislature renewed the Ferris School corporation giving it perpetual existence. 23 *Del.Laws*, Ch. 117. However, the original 1885 incorporation was on March 9 of that year and renewal was on March 14, 1905. Because of that five-day lapse, the General Assembly found it necessary in 1911 to validate and confirm all acts of the "renewed" corporation as if the charter had been passed before the twenty years expired. 26 *Del.Laws*, Ch. 131. It also enacted an amendment to the charter not germane to this litigation. 26 *Del.Laws*, Ch. 132.

The 1915 *Revised Code* contained a provision relating to the corporation of the Ferris Industrial School. *Id.*, Article 9. Pertinent sections provided:

2192. Sec. 1. **Incorporation; Powers:**—The Ferris Industrial School is incorporated and made a body politic in law, and by the name shall have perpetual succession and is made able and capable in law, to have, take, purchase, receive, possess and retain to it and its successors, for the use and lawful objects of the corporation, any estate, real or personal, (provided that the annual income of the entire estate held shall not exceed fifteen thousand dollars), and the same to sell, grant, demise, alien or dispose of, to make contracts relative to the objects of said incorporation, to sue and be sued, implead and be impleaded in all courts of law and equity....

2193. Sec. 2. **Membership in; How Obtained:**—Every person who shall pay to the said corporation the sum of forty dollars, or eight dollars annually for the

term of six years, shall become a member thereof during its existence, and every person paying the sum of two dollars annually shall be a member while he continues to contribute the said sum, and such payment shall be made at the time and in the manner to be prescribed in the By-laws of the said corporation. Provided, that the name of every such person shall have been previously proposed for membership at a stated meeting of the Board of Managers, and that he shall have been elected at any subsequent stated meeting of the Board by a majority of the Mangers then present.

**2194. Sec. 3. Board of Managers; Election; Quorum; Meetings; Vacancies; Officers:**—The estate and concerns of the said corporation shall be managed by a Board of twenty-six managers,....

The right to sue and be sued was retained. Also specified were the powers of the Board of Managers.

In 1919 the General Assembly made the Ferris School a State institution. 30 *Del. Laws,* Ch. 149. The preamble provided:

WHEREAS it is considered that the care and maintenance of incorrigible and wayward juveniles is properly a State function and not the function of a private institution, and it is desired by the Ferris Industrial School and it has proposed to convey to the State of Delaware all of the lands, buildings, equipment, supplies, moneys, securities and other assets of The Ferris Industrial School *provided the State of Delaware will continue to maintain and operate said school, in accordance with the purposes for which said corporation was established and in conformity with the Trust hereinabove referred to.* [Emphasis added.]

Pertinent portions of the transfer of the Ferris School to the State were:

Section 1. That the proposal of Ferris Industrial School be and the same is hereby accepted and the Governor of the State of Delaware is hereby authorized for and on behalf of the State of Delaware to accept and receive from Ferris Industrial School a deed or deeds or other instrument, properly and legally conveying the title to the lands, buildings, equipment, supplies, moneys, securities, and other assets of Ferris Industrial School to the State of Delaware. Said property when received by the State of Delaware and all of the income or increments thereof shall be used for the maintenance of a Reform School, in accordance with the purposes of said Ferris Industrial School and in conformity with the Trust established by the Trustee of John Ferris.

Section 2. All of the property and assets received by the State of Delaware from said Ferris Industrial School shall be inventoried by the State Treasurer and an account under the name of "Ferris Industrial School of Delaware" shall be kept by the State Treasurer separate and apart from the general or other accounts of said State, in which account shall be included all of the income, increments or gains arising from said property and the expenditures and disbursements thereof for the purposes herein defined.

The Board of Trustees took over for the prior Board of Managers. Its powers appeared, in part, as follows:

Section 6. The said Board of Trustees shall have sole and complete control and management of Ferris Industrial School of Delaware, ... *and the said Board of Trustees are hereby authorized to exercise all of the powers conferred upon the Board of Managers of the Ferris Industrial School under Chapter 70, Article 1 of Revised Code of Delaware, 1915, as fully and absolutely as if the same were herein repeated, recited and specifically set out and re-enacted.* [Emphasis added.]

The legislature in 1943 changed the name of the Ferris Industrial School of Delaware to the Ferris School for Boys. 44 *Del. Laws,* Ch. 139. Under § 2 of that act, the Ferris School for Boys:

shall have all the rights and powers and all the duties and obligations heretofore or hereafter created, which are, or shall be vested in, or imposed upon the Ferris Industrial School of Delaware.

The Youth Services Commission [Commission] was created in 1957. 51 *Del. Laws*, Ch. 274. It consisted of eight members and several *ex-officio* members. 31 *Del.C.* § 5103. Among its general powers, 31 *Del.C.* § 5120, were:

(1) Have sole and complete control of the training schools and other State facilities for readjustment of delinquent children.

\* \* \* \* \* \*

(7) Establish such rules and regulations relative to the ... discipline, management, government, instruction, safekeeping and the disposition of the juveniles.

(8) Exercise all powers not inconsistent with this chapter as are necessary to discharge their responsibility of legal custody of a juvenile.

The 1957 act, § 5, provided that on July 1, 1958 all jurisdiction and control of the Ferris School for Boys and the Board of Ferris over any juvenile committed thereto would be transferred to the Commission and § 8 stated that any reference to the Ferris School for Boys in any current law shall now mean the Commission.

When the cabinet form of government was created, the functions of the Commission were again transferred. 57 *Del.Laws*, Ch. 301. This time the transfer was to the Division of Corrections within the Department of Health and Social Services. 29 *Del.C.* § 7916(1)(ii). Another transfer occurred in 1975. 60 *Del.Laws*, Ch. 251. A Department of Correction was established and the powers formerly held by the Commission transferred in 1970 were now transferred to the new Department of Correction. 29 *Del.C.* § 8904(1)(a). The Department of Correction was to perform all powers, duties and functions heretofore vested in the Commission.

The final transfer (to date) has been to the Department of Services for Children, Youth and Their Families. 64 *Del.Laws*,

Ch. 108. This was accomplished in 1983. The powers formerly vested in the Bureau of Juvenile Correction in the Department of Correction were taken over by the new Division of Youth Rehabilitative Services. 29 *Del.C.* §§ 9005, 9010(2). In addition, all facilities, institutions, property and equipment of the Ferris School for Boys were transferred to the new department. 29 *Del.C.* § 9012(b)(1). The legislation setting up this new department provided that all reference to any board, commission, etc. consistent with the act shall now mean the new department. 29 *Del.C.* § 9012(c), (f), (g).

■ When the Department of Health and Social Services was created, the Division of Corrections within that department became the successor trustee of the Ferris Trust. *Pollock*, 271 A.2d at 48. Accordingly, the Department of Correction, Division of Juvenile Corrections and now the Department of Children, Youth and Their Families, Division of Youth Rehabilitation became the successor trustees.[2] The original powers vested in the corporation which became the successor trustee to Dr. Harlan included the right to sue and be sued. Those powers have never been divested. The lengthy recital of legislative enactments clearly shows an unbroken embodiment of powers and obligations.

### DISCUSSION

■ In general, the State of Delaware may not be sued without its consent. *Donovan v. Delaware Water and Air Resources Commission*, Del.Supr., 358 A.2d 717 (1976). Article I, § 9 of the Delaware Constitution provides that the only way to limit or waive the State's immunity is by legislative enactment. *Shellhorn & Hill, Inc. v. State*, Del.Supr., 187 A.2d 71 (1962).

■ The power to sue and be sued has been held to waive the State's sovereign immunity. *Department of Community Affairs and Economic Development v. M. Davis & Sons, Inc.*, Del.Supr., 412 A.2d 939

**2.** Pursuant to D.R.E. 202(d), the Court takes judicial notice that the Secretary of the Department of Services for Children, Youth and Their Families claims to be the successor trustee of the Ferris Trust. He did so in a petition filed in Chancery Court in 1989 seeking that Court's approval of a sale of a portion of the original 190 acres bought by Dr. Harlan. The claim of being successor trustee would be consistent with the statutory history and *Pollock*.

(1980); *Wilmington Housing Authority v. Williamson*, Del.Supr., 228 A.2d 782, 787 (1967). The same power that was conferred on the 1885 corporation was made perpetual in 1905 and reenacted in 1915. The State and the corporation agreed in 1919 to the State taking over the corporation as long as the original purposes of the corporation and trust were followed. 30 *Del.Laws*, Ch. 149. The power to sue and be sued has never been revoked.

In the instant case, the State seeks to avoid the result of waiver by making two arguments. First, it argues that the presence of the words sue and be sued no longer means waiver. Second, it argues that the power to sue and be sued was conferred upon the 1885 corporators but not the Board of Managers set up in the same act.

The State's first argument misconstrues the Tort Claims Act. 10 *Del.C.*, Ch. 40. The State cites § 4011(a) which says in part, "[t]hat a governmental entity has the power to sue and be sued ... shall not create nor be interpreted as a waiver of the immunity granted in this subchapter." "Governmental entity" is basically any of the three Delaware counties, or any municipality or any instrumentality thereof. 10 *Del.C.* § 4010(2). It does not include the State. The reference to subchapter is Subchapter II, "County and Municipal Tort Claims".

Subchapter I refers to "State Tort Claims". The two subchapters, now combined under Chapter 40 were enacted separately. The State section was first enacted in 1978, 61 *Del.Laws*, Ch. 431. The provisions relating to the counties and municipalities were enacted in 1979. 62 *Del. Laws*, Ch. 124.

The sue and be sued disclaimer found in § 4011 does not appear in subchapter I relating to State Tort Claims. The provisions relating to the County and Municipal Tort Claims cannot be read into the State Tort Claims sections. *Burns v. United Services Automobile Assoc. Properties Fund, Inc.*, Del.Super., C.A. No. 90C–MR–60, Herlihy, J., 1991 WL 53399 (March 14, 1991). The Supreme Court decided in 1967

that the Wilmington Housing Authority was a state agency, not a municipal agency. *Wilmington Housing Authority*, 228 A.2d at 787. The legislature is presumed to know of this decision when it enacted the State Tort Claims Act in 1978. *Du-Pont v. DuPont*, Del.Supr., 87 A.2d 394 (1952). It chose not to place the disclaimer language it enacted one year later in the County and Municipal Tort Claims Act. Since 1978 the legislature has never added the disclaimer to the State Tort Claims Act, even after the *Department of Community Affairs* case, thus, it is only fair to assume the General Assembly did not intend to include or make applicable to the State the disclaimer language found in § 4011 for local governments. Accordingly, the State's first argument fails.

The State's second argument is equally unavailing. It contends that the power to sue and be sued was granted to the 1885 corporators, not the Board of Managers. It then argues that only the powers of the Board of Managers was transferred to the Board of Trustees when the State assumed control of Ferris School in 1919. The State cites no authority for this novel argument seeking to differentiate the delegation of powers to the board versus the corporation.

The 1885 Board was given the power to manage the "estate and concerns of the corporation". This included the power to sue and be sued. The language granting the 1885 Board its powers is similar to the present day statutory scheme providing that "the business and affairs of every corporation ... shall be managed by or under the direction of a board of directors...." 8 *Del.C.* § 141(a). It also is similar to the 1885 enactment for private corporations whereby the "business" of every corporation would be managed by a board. 17 *Del.Laws*, Ch. 147. The power to sue and be sued devolves upon the board.

The power of the Ferris School corporation to sue and be sued was one of the powers assumed by the Board in 1885. It was transferred to the Board of Trustees established by the State in 1919.

The original Ferris School corporation's power to sue and be sued, renewed in 1905 and 1911, reenacted in 1915, conveyed in 1919 and thereafter remains. The Ferris School and its operation are unique. None of the adult or female juvenile correctional facilities have this unique history.[3] From 1885 until the present, including on October 20, 1979, the State had and has waived sovereign immunity in connection with its management of Ferris School. The State is potentially liable to plaintiff Masten.

### CONCLUSION

For these reasons, plaintiff's motion for partial summary judgment is **GRANTED** and the State's motion for summary judgment is **DENIED.**

---

**3.** At least if they do, the history of those institutions or facilities is not part of and is not decided in this case.