Jane DOE, in her own behalf and as Next Friend and Guardian of Mary Doe, Plaintiff Below, Appellant,

v.

Harry CATES, Director of the Division of Social Services, the Division of Social Services, the Family Court of the State of Delaware, and the Honorable David P. Buckson, Defendants Below, Appellees.

Frank J. BEDO, Plaintiff Below, Appellant,

v.

STATE of Delaware, Defendant Below, Appellee.

Ann D. LAIRD, Plaintiff Below, Appellant,

v.

STATE of Delaware, et al., Defendants Below, Appellees.

Kenneth MASTEN, Plaintiff Below, Appellant,

v.

STATE of Delaware, DEPARTMENT OF CORRECTION, Defendant Below, Appellee.

Saxton C. LAMBERTSON, Mary L. Moore, Delbert G. Lambertson and Betty Ann Wharton, Heirs of Gilbert S. Lambertson, deceased, and as Executors of the Estate of Clara L. Lambertson, deceased, Plaintiffs Below, Appellants,

v.

STATE of Delaware, Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: April 30, 1985.

Decided: Sept. 26, 1985.

William E. Moore and Gary A. Myers, of Community Legal Aid Soc., Inc., Georgetown, Philip E. Herrmann, Pro Bono Counsel, Wilmington, and John J. Schmittinger, Pro Bono Counsel, of Schmittinger & Rodriguez, Dover, for appellant Doe.

Gary W. Aber, Wilmington, for appellant Bedo.

Richard D. Allen (argued), and Jeffrey S. Welch of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellant Laird.

David C. McBride (argued), of Young, Conaway, Stargatt & Taylor, Wilmington, for appellant Masten.

Clifford B. Hearn, Jr. (argued), Wilmington, for appellants Lambertson.

Fred S. Silverman, State Sol., Richard E. Fairbanks (argued), John A. Parkins, Jr., Richmond L. Williams, James J. Hanley, Thomas L. LaPenta and Deborah A. Blom, Wilmington, Deputy Attys. Gen., for appellees.

Before McNEILLEY, HORSEY and CHRISTIE, JJ.

CHRISTIE, Justice:

This opinion results from the consolidation of appeals from five Superior Court decisions. While the underlying facts in each case are different, all five cases present the same basic issue: Does the State of Delaware continue to have the right to assert its sovereign immunity as a valid defense to a tort action brought against the State where the State has failed to provide itself with insurance protection?

Each appellant has asserted a claim against the State and/or its agencies for damages alleged to have been caused by the wanton, grossly negligent, or negligent acts of the State's employees or agents. In each case, the State has asserted the defense of sovereign immunity, and the Superior Court has dismissed the claims against the State and/or its agencies on the ground that each claim against the State is barred by the doctrine of sovereign immunity. It is from these decisions that the appellants appeal.

## I.

In general, the doctrine of sovereign immunity provides that the State may not be sued without its consent. *Department of Community Affairs and Economic Development v. M. Davis & Sons, Inc.*, Del. Supr., 412 A.2d 939 (1980); *Shellhorn & Hill, Inc. v. State*, Del.Supr., 187 A.2d 71 (1962); Del. Const. art. I, § 9. Article I, § 9 of the Delaware Constitution provides that the only way to limit or waive the State's sovereign immunity is by act of the General Assembly. *Shellhorn & Hill*, 187 A.2d at 74–75. Therefore, unless there is a

statute by which the General Assembly can be said to have waived the defense of sovereign immunity, the appellants' suits must fail.

With some reluctance, the courts of this State have applied the doctrine of sovereign immunity to bar numerous claims against the State. On numerous occasions, Delaware courts have urged the General Assembly to remove the bar to recovery which this doctrine presents. *See, e.g., Pajewski v. Perry,* Del.Supr., 363 A.2d 429 (1976) (and cases cited therein).

> The reason, of course, is that the State, acting through its agents, *does* cause injury to others for which, in justice, it should be legally responsible. And a concept which draws its strength from the notion that the State is outside the law is hardly at home in our third century of independence.

*Pajewski,* 363 A.2d at 433.

### A.

■ With an apparent intent to set in motion a program which would alleviate the injustice created by the doctrine, the General Assembly enacted in 1969 an act which now appears in the Delaware Code as 18 *Del.C.* ch. 65, entitled "Insurance for the Protection of the State". The purpose of the act was to provide protection for both the State and the public. *Pajewski,* 363 A.2d at 435; 18 *Del.C.* § 6503. This Court stated in the *Pajewski* case that by such legislation, "The General Assembly intended to enact a viable program which would, in its own words, '[p]rotect the public from wrongful actions of State officials and employees.'" *Id.* at 435.

The act established an Insurance Coverage Determination Committee charged with the responsibility of achieving the act's purposes. *Id.;* 18 *Del.C.* § 6502. The Committee was charged with determining "the method of insuring, the amount of insurance, and the class of coverage covering any type of risk to which the State may be exposed...." *Id.* Thus, the Committee was given discretion as to how it would

insure various risks and how much coverage would be provided for those risks, but it was not given any discretion as to which risks were to be covered, nor was it given the funds to finance its recommendations. *Id.* The Committee was required to insure *any* type of risk to which the State may be exposed. It was anticipated that it would do so by insurance contracts or through a self-insurance program. *Id.*

The act went on to provide in 18 *Del.C.* § 6511 that:

> The defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether same be covered by commercially procured insurance or by self-insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate.

This Court observed in the *Pajewski* case, that § 6511, as a statute enacted by the General Assembly, constituted a presumptive waiver of the sovereign immunity defense. This Court went on to indicate that if the State is to continue to assert the defense of sovereign immunity, the State has the burden of proving that the Committee had met its responsibilities under 18 *Del.C.* ch. 65. The State was specifically charged with proving what decisions the Committee had made regarding the risk involved in the case under consideration, whether self-insurance is or was feasible as a means of providing coverage for that risk, and the reason why no coverage has in fact been provided. At the same time, this Court recognized that "[T]he availability of appropriations to purchase commercial insurance may have an impact on how the Committee has met its statutory responsibility." *Pajewski,* 363 A.2d at 436.

It is, therefore, apparent that although this Court held in *Pajewski* that the Committee was required to cover all risks to which the State may be exposed, the Court recognized the possibility that a situation could legitimately arise in which there was no insurance or self-insurance program to

cover the risk at hand despite the fact that the Committee had met its responsibilities. Moreover, it was never said that the Committee was responsible for ensuring that coverage actually exists. It was impossible for the Committee to create coverage without funding.

In the cases under consideration, the appellants argue that the Committee has failed to meet its statutory obligations under the *Pajewski* case, and that therefore, the State must be deemed to have waived its immunity.

Appellants allege, *inter alia*, that the Committee met infrequently and irregularly, that members sent delegates rather than attending themselves, that Governors (who are Committee members) failed to include the Committee's proposed appropriation requests in their budget requests to the General Assembly, (preferring a tort liability act instead)[1], that the Committee failed to adequately lobby the members of the General Assembly for passage of the program, that a tort liability act proposed by the Committee would have limited liability of the State rather than have protected the public,[2] and that the Committee failed to draft regulations to implement a self-insurance program.

There are a large number of cases, many of which are unreported, in which the Superior Court has recognized that the Committee's efforts to establish an effective insurance program, as contemplated by 18 *Del.C.* ch. 65, satisfied the requirements which this Court set down in the *Pajewski* case. *See, e.g., Porter v. Delmarva Power & Light Co.*, Del.Super., 488 A.2d 899, 903 n. 1 (1984). In each of those cases, the Superior Court has found that the Committee had made a good faith effort to formulate a comprehensive insurance plan. The Court found further in each case that the failure to implement the plan was not due to any failure on the part of the Commit-

tee. We agree with those findings in view of the Committee's efforts, some of which we here list.

In 1970, the Committee directed Arnold R. Olsen, the State Director of Insurance Coverage, to prepare recommendations for liability insurance coverage for the State. On the basis of its investigation, the Committee decided that because of the prohibitive cost of premiums for an annual general liability policy, a tort liability act should be enacted by the General Assembly. Such an act would have limited the State's liability exposure and, therefore, would have reduced the cost of coverage. It would nevertheless have permitted some recovery against the State by injured persons, thus providing the protection for the public envisioned by the Insurance Act. In addition, the Committee determined that $200,000 should be appropriated for the self-insurance fund to implement the act once it was passed. Neither the act nor the appropriation were passed by the General Assembly in 1971.

The proposed legislation was resubmitted in 1972 with a request for funds for an insurance policy. However, again, the legislature did not act.

In May of 1973, the Committee met to re-evaluate the program. The Committee decided to continue to seek passage of the tort liability act with appropriations for a commercial general liability insurance policy. The Committee instructed Mr. Olsen to prepare legislation repealing any existing legislation which waived sovereign immunity. Mr. Olsen did so and a sponsor was secured to introduce the legislation to the General Assembly. However the legislation was not passed.

In September of 1973, the Committee inquired about the possibility of achieving its goals through a self-insurance program created by administrative regulation. In

---

1. 11 *Del.C.* ch. 65 cannot be interpreted as a limitation on the Governor's rights with respect to fiscal appropriations. *See* Del. Const. art. III.

2. This argument ignores the policy determination that such an act would make an insurance program, and thus any protection for the public, economically feasible.

addition, the Committee determined to seek legislation which would permit it to promulgate such a regulation. This plan was later abandoned after the Attorney General's office determined it was not legally feasible to achieve the Committee's objectives in this manner.[3]

Instead of pursuing a program of self-insurance through administrative regulation, the Committee asked the Attorney General's office to draft new legislation to meet the Committee's objectives. The legislation was drafted and introduced to the General Assembly but was never enacted into law. The Committee also met in 1979 and determined to pursue passage of a tort liability act and to seek money to purchase a commercial general liability policy to insure this risk.

Further actions were taken (including additional meetings not noted herein), and decisions made between the various committee meetings. For example, items were designated to be covered by self-insurance or through commercial insurance. Mr. Olsen was instructed to continue to gather information about the cost of coverage for various risks, to prepare budget requests, and to fulfill other Committee responsibilities. Moreover, between meetings there was frequent communication between Committee members. They also communicated with various legislators about funding and implementing legislation for the program. The record reflects that the Committee made budget requests for money to purchase a commercial general liability insurance policy from at least 1974 through 1983.

It is clear then that the Committee formulated a program to cover the types of risks here involved and determined the feasibility of a program for insuring these risks. Thus, the record establishes that the Committee formulated the type of program envisioned by 18 *Del.C.* ch. 65. Such a showing is what this Court required of the Committee in the *Pajewski* case. However, in spite of the Committee's repeated attempts to obtain legislation and appropriations to purchase insurance or to fund a self-insurance program, the General Assembly has never acted. At the time these cases arose, the presumptive waiver of sovereign immunity was overcome by the factual situation here outlined. Such presumptive waiver of immunity has expired now because of fifteen years of lack of follow-through.

Therefore, this Court holds, as a matter of law, that the State has met its burden under the *Pajewski* case and has overcome the presumptive waiver of immunity in 18 *Del.C.* § 6511.[4]

## B.

Appellants in this case have not rested their argument that the State waived its defense of sovereign immunity solely on 18 *Del.C.* § 6511. Appellants also claim that the State Tort Claims Act, 10 *Del.C.* §§ 4001–4005, enacted in 1979, provides for a waiver of all sovereign immuni-

---

3. Appellants assert that despite the Committee's abandonment of this plan, tort liabilities of the type at issue in this case are covered by the self-insurance fund. It is obvious, however, that by abandoning this course of action, the Committee had determined that it would have to seek to cover tort liability risks with the further protection of a tort liability act and the act which was a part of that plan was never enacted by the General Assembly. Until such an act were to be adopted, the Committee did not deem "it to be advisable to insure [the tort liability] risks through a self-insurance program." 18 *Del.C.* § 6530. Therefore, the risks were not and are not covered under such a program.

The Committee did not determine to exclude the tort liability risk from coverage. In fact, the Committee did precisely what *Pajewski* and 18 *Del.C.* § 6502 require: It determined the method of insuring this type of risk. It was the General Assembly which did not accede to the Committee's determination and failed to implement the program.

4. Apparently, the *Pajewski* case has been interpreted as requiring the trial courts to conduct a new inquiry into the Committee's efforts to meet its responsibilities under 18 *Del.C.* ch. 65 each time the State asserts the defense of sovereign immunity. In view of our holding today, such inquiry is no longer necessary.

ty except such sovereign immunity as is specifically preserved in that act. We find no merit to this contention.

It is § 4001 on which appellants principally rely.[5] That section provides that except as required by the constitution or laws of the United States or Delaware, the State and its agents are protected by sovereign immunity in any civil suit or proceeding at law or in equity or before any administrative tribunal where the act (of the State) was done in good faith, without gross or wanton negligence, and arose out of and in connection with the performance of official discretionary duties. Certain specific officials, whose acts are not at issue in this case, are given absolute immunity. Moreover, the statute provides that the plaintiff has the burden of proving the provisions of § 4001 do not exclude liability on the part of the State.

Appellants argue that the State Tort Claims Act is a comprehensive and exclusive codification of all aspects of the doctrine of State sovereign immunity. In their view, the act was an attempt by the General Assembly to reinstitute a limited degree of sovereign immunity where the General Assembly thought the State had no immunity at all. Appellants suggest that by enacting 10 *Del.C.* ch. 40, the General Assembly wished to provide for State liability whenever the State or one of its agents engaged in a ministerial act and injured another party through gross or wanton negligence or the act complained of was done in bad faith.

This Court has previously stated that "Where a party seeks to hold the State or a state agency liable under a statute, any reasonable doubts as to the proper construction of the statute should be resolved in favor of the State." *Department of Community Affairs and Economic Development v. M. Davis & Sons, Inc.,* Del. Supr., 412 A.2d 939, 942 (1980). We hold that the legislature did not intend by enacting 10 *Del.C.* § 4001 to waive sovereign immunity in all cases where a ministerial act was performed with gross or wanton negligence or in bad faith. Appellants' interpretation reads much too much into this limited statute and would expose the State to liabilities which would not otherwise exist. It was clear in 1979 that the General Assembly had declined to fund its program to provide increased protection for injured persons.

The purpose of the State Tort Claims Act, as stated in its synopsis, was to codify existing common law principles of sovereign immunity. In Delaware, this immunity was virtually absolute. The act was

**5.** 10 *Del.C.* § 4001. *Limitation on civil liability.*

Except as otherwise provided by the Constitutions or laws of the United States or of the State, as the same may expressly require or be interpreted as requiring by a court of competent jurisdiction, no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee, including the members of any board, commission or agency of the State, whether elected or appointed, and whether now or previously serving as such, in any civil suit or proceeding at law or in equity, or before any administrative tribunal, where the following elements are present:

(1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

(3) The act or omission complained of was done without gross or wanton negligence; provided that the immunity of judges, the Attorney General and Deputy Attorneys General, and members of the General Assembly shall, as to all civil claims or causes of action founded upon an act or omission arising out of the performance of an official duty, be absolute; provided further that in any civil action or proceeding against the State or a public officer, employee or member of the State, the plaintiff shall have the burden of proving the absence of 1 or more of the elements of immunity as set forth in this section.

further intended to discourage law suits which might create a chilling effect on the ability of public officials or employees to exercise their discretionary authority. The synopsis to the act also says that the act was to make clear that public officers and employees would be fully liable where they exercised their authority in a grossly negligent, or bad faith manner. However, this latter provision does not, as appellants claim, require a conclusion that the State is also liable for such acts in all instances.

> The title of House Bill 579 provided:
> An act to amend Title 10, Delaware Code, by adding a new Chapter 40 thereto providing for *limitations* of the civil liability of the State, its subdivisions and its public officers and employees.... (Emphasis supplied.)

61 *Del.Laws* ch. 431. The title of the bill speaks of *limiting* civil liability. It does not mention sovereign immunity at all.

At the time the State Tort Claims Act was enacted, the State Insurance Act, including 18 *Del.C.* § 6511 discussed above, was already in existence. When the General Assembly enacted the State Tort Claims Act it is presumed to have been aware of the existing law which included 18 *Del.C.* § 6511. *DuPont v. DuPont*, Del.Supr., 87 A.2d 394 (1952). Section 6511 waived immunity only as to risks covered by the State Insurance Program. If 10 *Del.C.* § 4001 were interpreted as appellants suggest, it would have the effect of waiving immunity even in cases where no insurance coverage had been provided under the Insurance Act of 18 *Del.C.* ch. 65. Such an interpretation would expand the liability the State has agreed to under 18 *Del.C.* ch. 65, and therefore, would be inconsistent with the stated purpose and the title of the Tort Claims Act, limiting liability.

■ In keeping with the purpose of the State Tort Claims Act, this Court holds that § 4001 must be applied to limit the State's liability where it has, by some means independent of 10 *Del.C.* § 4001, waived immunity. We note that Judge Stapleton reached a similar conclusion in *Space Age*

*Products, Inc. v. Gilliam*, D.Del., 488 F.Supp. 775 (1980). In the instant cases, the State has not independently waived sovereign immunity under 18 *Del.C.* § 6511 because there is no insurance coverage for the risks presented. Appellants have not pointed to any other independent waiver of sovereign immunity on which they can rely. Therefore, this Court concludes that the State has not waived sovereign immunity in any of the present cases.

## II.

■ Appellants also urge upon the Court the theory that since sovereign immunity was judicially created, if it is to be abolished, it would be appropriate for it to be judicially abolished. However, it is clear that the doctrine of sovereign immunity was not judicially created in Delaware. It was established by the State Constitution. *Donovan v. Delaware Water & Air Resources Commission*, Del.Supr., 358 A.2d 717, 721 (1976); *Shellhorn & Hill, Inc. v. State*, Del.Supr., 187 A.2d 71 (1962); Del. Constitution art. I, § 9.

In fact, the doctrine dates back to Delaware's first constitution adopted in 1776. In that constitution, the doctrine of sovereign immunity as it existed at common law was written into our basic law. *George & Lynch, Inc. v. State*, Del.Supr., 197 A.2d 734, 735 (1964); *Shellhorn & Hill*, 187 A.2d at 73; Del. Const. of 1776, art. 25. The doctrine was carried forward into the constitution of 1792 in art. I, § 9 and also into the constitution of 1831 in art. I, § 9. Finally, as we stated in *Shellhorn & Hill*, the provision was placed in our present constitution.

Not only does the constitution provide for the doctrine of sovereign immunity, it also specifies the mode of abolishing or limiting that doctrine. According to Delaware's Constitution, the doctrine can only be abolished by an Act of the General Assembly. *Blair v. Anderson*, Del.Supr., 325 A.2d 94, 96 (1974); *Shellhorn & Hill*, 187 A.2d at 73–74. Because of this consti-

tutional mandate, this Court is bound to apply the doctrine of sovereign immunity as we find it to exist in the constitution and the statutes.

### III.

■ Appellants contend that other parties with similar injuries may have redress against the State because the State happens to have insurance against the risk which caused their injury, whereas appellants have no redress against the State because the State has failed to obtain insurance against the risks which cause their injuries. Appellants argue that they have been denied equal protection of the laws, U.S. Const. amend. XIV, § 1, unless the State's failure to insure itself is shown to rationally advance a legitimate government interest.

The answer to appellants' equal protection claims is quite simple. Those plaintiffs who have the same types of claims are treated equally. There is no disparate or discriminatory treatment which rises to constitutional dimensions in these cases to which a claim of equal protection can apply.

### IV.

#### A.

Turning now to appellants' due process claims, they argue that 18 *Del.C.* § 6503 created a property interest, i.e. a cause of action, in parties who are injured by the State. They further argue that the State arbitrarily and unreasonably failed to meet its obligations in establishing an insurance fund under § 6503 and the State has thus denied them due process by taking away their cause of action, or property interest, without a hearing. U.S. Const. amend. XIV, § 1.

The starting point in any procedural due process analysis under the Fourteenth Amendment to the United States Constitution is to determine whether a liberty or property interest is involved. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct.

2701, 33 L.Ed.2d 548 (1972). Here, the appellants have claimed a property interest only. In the case of *Board of Regents v. Roth*, the Supreme Court defined a property interest. The Court stated that "[T]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person *has already acquired* in specific benefits." *Id.* 92 S.Ct. at 2708 (emphasis added). The Court then went on, in what is now recognized as the fundamental definition of property interests, to say that:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. *He must, instead, have a legitimate claim of entitlement to it.*

*Id.* 92 S.Ct. at 2709 (emphasis added). This Court has adopted that same definition. *Slawik v. State*, Del.Supr., 480 A.2d 636, 641 (1984).

A legitimate claim of entitlement may be created by State law, which provides "[R]ules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 92 S.Ct. at 2709; *Slawik*, 480 A.2d at 641. Thus, we must look to Delaware law to determine whether appellants have a legitimate claim of entitlement to a cause of action by reason of 18 *Del.C.* ch. 65.

As we have discussed above, the doctrine of sovereign immunity precludes the existence of a cause of action against the State unless the State has chosen to waive that immunity. In the present cases, the State, by choosing not to insure against the risks in question, has chosen not to waive sovereign immunity under 18 *Del.C.* ch. 65. Therefore, a right of action against the State never came into existence. Appellants had no property interest of which they could have been denied here.

#### B.

A further due process argument has been pressed by appellants. They assert

that because this Court held in the *Pajewski* case that the Committee's obligation to protect the public was mandatory, the public had a right to such protection, presumably a property interest, of which appellants were unlawfully deprived. This contention is based upon a misunderstanding of our holding in the *Pajewski* case. The Committee did formulate a plan which would cover any risks to which the State may be exposed as *Pajewski* requires. It did determine the method for insuring the risks in question here as *Pajewski* requires. On the other hand, as noted above, this Court contemplated the possibility in *Pajewski* that the situation presented in these cases could legitimately arise—i.e., that no insurance covered the risk presented despite the Committee's compliance with its obligations. Under the circumstances, appellants have no property interest in protection against the risks to which they were exposed.

## C.

Appellants have also argued that the State's failure to meet what appears to be its own, self-imposed insurance obligation violates the due process provisions of the Delaware Constitution. Article I, § 9 of the Delaware Constitution states, in pertinent part, that "every man for an injury done him in his reputation, person, movable or immovable possessions, shall have remedy by the due course of law and justice administered according to the very right of the cause and the law of the land, without sale, denial, or unreasonable delay or expense." Appellants contend that the pertinent "law of the land" in these cases is the Tort Claims Act.

However, the expression "the law of the land," in the Delaware constitution, has essentially the same meaning as "due process of law" in the federal constitution. *Aprile v. State*, Del.Super., 143 A.2d 739, *aff'd*, Del.Supr., 146 A.2d 180 (1958). Therefore, as in our study of federal constitutional due process, we also reject appel-

lants corresponding state constitutional claim.

Moreover, this Court has stated that to demonstrate a violation of this clause of the State constitution, appellants must show the statute in question "unreasonably deprives them of the fundamental right of action." *Bailey v. Pennington*, Del.Supr., 406 A.2d 44, 47 (1979). As our federal constitutional due process analysis has shown, plaintiffs never had a fundamental right of action against the State of which they could be deprived.

## V.

Appellant Masten has made two further arguments. He contends that the State has specifically waived sovereign immunity with respect to its operation of the Ferris School because of the legislation under which the school was taken over by the State, the charter of the school, and the trust established under the will of John Ferris. This argument was not addressed by the Superior Court. We, therefore, will remand his case to the Superior Court for a determination of this issue.

Appellant Masten also argues that his case should be remanded for discovery on the issue of whether the State has insurance coverage for the claim asserted in his complaint. The Superior Court noted that appellant Masten had requested additional discovery in his case, but it granted summary judgment without permitting such discovery.

It is clear that the existence of an insurance policy covering appellant Masten's claim could constitute a waiver of sovereign immunity under 18 *Del.C.* § 6511. On remand appellant Masten should be allowed to determine what insurance coverage was in effect during the calendar year 1979 when the accident in his case occurred and to make further application to Superior Court if there was applicable coverage.

The judgments of the Superior Court are affirmed; *appellant Masten's case is re-*

manded for further proceedings in accordance with this opinion.