Jason F. PAULEY, a minor, by his mother and natural guardian and next friend Louise Ford PAULEY, Bryan F. Pauley, a minor, by his mother and natural guardian and next friend Louise Ford Pauley, Louise Ford Pauley, individually, and Patrick J. Pauley, Plaintiffs Below, Appellants,

and

Robert Hludzinski, R.R. Seaside, Inc., R.R. Bayside, Inc., R.R. Outlet Malls, Inc., and Charter Oak Group, Ltd. dba Charter Oak Partners, Defendants Below, Appellants,

v.

Kimberly A. REINOEHL, the Delaware State Police, the State of Delaware Department of Public Safety, the State of Delaware, and London Fog Industries, Inc., Defendants Below, Appellees.

No. 679, 2002.

Supreme Court of Delaware.

Submitted: June 16, 2003.
Decided: Dec. 17, 2003.
Opinion on Grant of Reargument April 26, 2004.

Richard E. Poole (argued) and Somers S. Price, Jr. of Potter Anderson & Corroon, LLP, Wilmington, DE, for Plaintiffs Below, Appellants.

John D. Balaguer (argued) of White and Williams, LLP, Wilmington, DE, for Defendants and Cross Claimants Below, Appellants.

Jeffrey M. Weiner (argued) of Wilmington, DE, for Defendant Below, Appellee Kimberly A. Reinoehl.

Kevin J. Connors (argued) of Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, DE, for Defendant Below, Appellee, London Fog Industries, Inc.

George H. Seitz, III, (argued) Patricia P. McGonigle, and Carrie I. Dayton of Seitz, Vanogtrop & Green, Wilmington, DE, for Delaware State Appellees.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS Justices (constituting the Court en banc).

STEELE, Justice:

In this appeal from a grant of summary judgment in a personal injury case arising from an auto accident involving a Delaware State Police vehicle we consider whether the General Assembly, by passing the State Tort Claims Act (STC) or the Emergency Vehicle Statute (EVS), intended to waive completely the State's sovereign immunity. A complete waiver of sovereign immunity is inconsistent with the purpose reflected in the title of the STC. This Court has ruled that any doubt about the construction of the STC should be resolved in the State's favor and, therefore, we hold that the STC does not com-

pletely waive the State's sovereign immunity.

We also hold that the EVS does not completely waive the State's sovereign immunity. Subsection (d) of the EVS deals only with the waiver of governmental immunity, not sovereign immunity. If the General Assembly intended subsection (d) to waive completely the State's sovereign immunity, it would have done so expressly. A plain reading of the EVS, as well as a survey of the law of other jurisdictions, supports our view that the terms "sovereign immunity" and "governmental immunity" have distinct and separate meanings. Because the trial judge correctly resolved in the State's favor any reasonable doubt about the General Assembly's intent, he did not err by granting Appellees' Motion for Summary Judgment. We, therefore, AFFIRM.

## I

Appellants, the Pauley Plaintiffs, brought suit in the Superior Court to recover for injuries from an auto accident, which also resulted in the death of a passenger in the Pauley vehicle. Appellants claimed that Appellee, Kimberly A. Reinoehl's (a state police officer) negligence or gross negligence caused the accident. In addition, they claimed that Appellees, the State Institutional Defendants, are liable as Reinoehl's employer and the owner of the police car. The Appellants further claimed that the state police negligently trained and supervised Reinoehl and that their independent negligence also proximately caused the accident.

It is important to note that on the date of the accident, the State had available insurance that provided a maximum of $1,000,000 coverage per accident. A portion of this $1,000,000 limit has been used to settle the passenger's family's wrongful death claim. The State Defendants offered the remaining insurance coverage to settle the Pauley Plaintiffs' claim, to no avail. All Defendants moved for summary judgment, claiming immunity from any liability above the amount of the remaining available coverage. The trial judge granted all motions for summary judgment. The State Defendants' Order granting summary judgment was subject to the State tendering the Pauley Plaintiffs all remaining insurance proceeds. The Pauley Plaintiffs filed this appeal.

## II

The doctrine of sovereign immunity protects the State from suit unless a law enacted by the General Assembly waives the State's immunity.[1] All parties agree that the State is protected by the doctrine of sovereign immunity unless a waiver has occurred. The State admits that it has waived an amount up to $1,000,000 under its self-insurance program (18 *Del. C.* ch. 65) ("State Insurance Program").[2] This Court has confirmed that sovereign immunity is waived to the extent any risk or loss is covered by the State Insurance Program.[3] The Appellants contend, how-

---

1. Del. Const. art. 1, § 9; *Shellhorn & Hill, Inc. v. State,* 187 A.2d 71, 74 (Del.1962); *Turnbull v. Fink,* 668 A.2d 1370, 1373–74 (Del.1995).

2. DEL. CODE ANN. tit. 18, § 6511.
   The defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether same be covered by commercially procured insurance or by self-insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate.

3. *Turnbull,* 668 A.2d at 1376.

ever, that their recovery should not be limited to the State's insurance coverage, for two reasons. First, the STC, 10 *Del. C.* § 4001,[4] completely waives sovereign immunity regardless of the amount of insurance made available in the program. Second, the EVS, 21 *Del. C.* § 4106(d),[5] completely waives the State's sovereign immunity without regard to the availability of insurance. We therefore are called upon to address whether (and if so, the extent to which) the General Assembly intended the STC and/or the EVS to completely waive sovereign immunity.

---

**4.** DEL. CODE ANN. tit. 10, § 4001 (2003).

Except as otherwise provided by the Constitutions or laws of the United States or of the State, as the same may expressly require or be interpreted as requiring by a court of competent jurisdiction, no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee, including the members of any board, commission, conservation district or agency of the State, whether elected or appointed, and whether now or previously serving as such, in any civil suit or proceeding at law or in equity, or before any administrative tribunal, where the following elements are present:

(1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

---

## III

### *The STC does not completely waive the State's sovereign immunity protection.*

▮▮▮ The trial judge properly stated that the STC "shields the State and its public officers or employees from liability where the act or omission complained of arises from (1) an official duty involving certain forms of discretion, (2) the public officer or employee acts in good faith with the belief that the public is best served by the act or omission, and (3) the act or omission is done without gross or wanton negligence."[6] The presence of all three

(3) The act or omission complained of was done without gross or wanton negligence; provided that the immunity of judges, the Attorney General and Deputy Attorneys General, and members of the General Assembly shall, as to all civil claims or causes of action founded upon an act or omission arising out of the performance of an official duty, be absolute; provided further that in any civil action or proceeding against the State or a public officer, employee or member of the State, the plaintiff shall have the burden of proving the absence of 1 or more of the elements of immunity as set forth in this section.

**5.** DEL. CODE ANN. tit. 21, § 4106(d) (2003).

The driver of an emergency vehicle is not liable for any damage to or loss of property or for any personal injury or death caused by the negligent or wrongful act or omission of such driver except acts or omissions amounting to gross negligence or wilful or wanton negligence so long as the applicable portions of subsection (c) have been followed. The owner of such emergency vehicle may not assert the defense of governmental immunity in any action on account of any damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of such driver or owner.

**6.** *Shepard v. Reinoehl,* C.A. No. 99C–06–030, 00C–08–042 (Consolidated) at *8,*9.

elements confers statutory immunity upon the State and its public officers and employees. If any one of these elements is not satisfied, however, the STC provides no immunity at all. The claimant has the burden to prove that the STC's protection does not apply. Appellants argue that the STC was intended to waive sovereign immunity completely where any one of the elements is not satisfied, without regard to the State Insurance Program. Here, Appellants contend that Trooper Reinoehl acted with gross negligence, and therefore cannot avail herself of the purported protection of the STC. The Appellants misread the STC.

■ A complete waiver of sovereign immunity is inconsistent with the purpose and title of the STC. The STC is designed to protect public officials from liability, even when they were arguably negligent, where those officials act within the scope of their duties, in good faith and without *gross* negligence.[7] In *Space Age Products,* Judge Stapleton, citing the legislative synopsis, explained the STC's purpose:

> This Act has two basic purposes: first, by codifying existing common law standards, to discourage law suits which create a chilling effect on the ability of public officials and employees to exercise the far reaching decision-making authority which complex government demands of them; and conversely, to make clear that public officers and employees are fully liable where there (sic) exercise of authority is grossly negligent, the product of bad faith, or outside the scope of their official duties. The Act

also recognizes that there exists (sic) certain causes of action, principally of federal origin, which may result in personal liability of a public official, good faith and apparent authority notwithstanding. Indemnification for expenses incurred by the public officials in such instances is provided for. The scheme for immunity and indemnification is extended to the officers and employees of political subdivisions, except that such subdivision must provide the funds for indemnifying the employees within their jurisdiction. The right of the State, its agencies and political subdivisions to insure against the risks of indemnification is recognized but not mandated.[8]

In *Space Age Products,* Judge Stapleton expressly held that the STC did not waive sovereign immunity,[9] because to read the STC as implying a complete waiver of sovereign immunity, conflicts with the STC's legislative synopsis. For instance, such a waiver would be inconsistent with the General Assembly's intent to codify the existing law of sovereign immunity and to provide indemnification in the limited situations where a damage recovery is possible despite actions of the State officer taken in good faith within his scope of authority.[10] These purposes are consistent with the STC's title, "Limitation of Liability." [11]

■ Five years after *Space Age Products,* this Court addressed the applicability of the STC to ministerial acts in *Doe v. Cates.*[12] In *Doe,* this Court rejected the argument that the STC completely waives sovereign immunity as having no merit.[13] "[T]he legislature did not intend by enact-

---

7. *Space Age Products, Inc. v. Gilliam,* 488 F.Supp. 775, 779 (D.Del.1980).

8. *Id.*

9. *Id.* at 780.

10. *Id.*

11. *Space Age Products, Inc.* 488 F.Supp. at 780.

12. *Doe v. Cates,* 499 A.2d 1175 (Del.1985).

13. *Id.* at 1179–1180.

ing [the STC] to waive sovereign immunity in all cases where a ministerial act was performed with gross or wanton negligence or in bad faith." [14] As in *Space Age Products,* this Court also noted that the title of the STC referred to limiting civil liability, and did not mention sovereign immunity at all.[15] "Where a party seeks to hold the State or a state agency liable under a statute, any reasonable doubt as to the proper construction of the statute should be resolved in favor of the State." [16]

In *Doe,* this Court also harmonized the STC and the State Insurance Program,[17] noting that the State Insurance Program was already in existence when the STC was enacted, which suggested that the General Assembly was presumptively aware of the State Insurance Program when it enacted the STC.[18] Under the State Insurance Program, the State agreed to waive sovereign immunity only for those risks and losses that are covered by the State Insurance Program.[19] This Court stated that if the STC were to operate as a complete waiver of sovereign immunity, that would have the effect of expanding liability beyond that to which the State agreed under the State Insurance Program.[20] That, in turn, would be inconsistent with both the purpose and the title

of the STC: the General Assembly crafted the STC to limit liability, not abolish sovereign immunity.[21]

■ Appellants rely upon *Carter v. McLaughlin* where this Court held that the STC waives sovereign immunity for all claims of gross or wanton negligence.[22] There, we found no limit on the amount that is recoverable from the State for a valid claim of gross or wanton negligence under the STC.[23] The Court reached that decision even though the State agency (DART) argued that its liability was limited to the amount of insurance covered by 2 *Del. C.* 1329. But, Appellants' reliance on *Carter* is misplaced because that decision was vacated.[24] Vacating a judgment annuls the judgment and, to the extent indicated, invalidates the ruling that supports the judgment.[25] A vacated decision has no force and effect.[26]

■ Appellants ask this Court to readdress the scope of sovereign immunity and hold that the STC completely waives the State's sovereign immunity. The only support for Appellants' contention, however, is the vacated decision in *Carter.*. Based on the established law in *Space Age Products* and *Doe,* a complete waiver of sovereign immunity would be inconsistent with the

---

14. *Id.* at 1180.

15. *Id.* at 1181.

16. *Doe,* 499 A.2d at 1180.

17. *Id.* at 1181.

18. *Id.*

19. *Id.*

20. *Doe,* 499 A.2d at 1181.

21. *Id.*

22. 2000 Del. Lexis 162, *9–10 (Del.).

23. *Id.* at *5.

24. *Carter v. McLaughlin,* 758 A.2d 933 (Del. 2000) (vacating this Court's earlier decision on April 14, 2000).

25. *Pineman v. Oechslin,* 616 F.Supp. 1227, 1229 (D.Conn.1985).

26. Jill E. Fisch, *Rewriting History: The Proprietary of Eradicating Prior Decisional Law Through Settlement and Vacatur,* 76 Cornell L. Rev. 589, 597 (1991) (citing *Chandler v. System Council U–19,* No. CV85–AR–1948–s, slip op. at 4 (N.D.Ala. Oct. 20, 1986) (providing that "[a] decision which is vacated has no precedential value, and for all intents and purposes never existed.")).

purpose and title of the STC; moreover, any doubt about the construction of the STC must be resolved in the State's favor. This principle of statutory construction requires us to find that the STC does not completely waive the State's sovereign immunity.

## IV

### The EVS does not Completely Waive the State's Sovereign Immunity.

■ The plain language of the EVS suggests that the General Assembly did not intend to waive the State's sovereign immunity beyond the extent to which the State has insured against the risk involved in a claim (under that statute). Appellants argue that subsection (d) of the EVS completely waives sovereign immunity because it states that "[t]he owner of such emergency vehicle may not assert the defense of governmental immunity in any action on account of any damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of such driver or owner." Essentially, Appellants are asking this Court to find that "governmental" immunity and "sovereign" immunity have the same meaning and that in the EVS, the General Assembly intended to exempt claims under the EVS from the limitations otherwise applicable under the State Insurance Program. But, that construction is contrary to the plain language of the EVS. The U.S. Supreme Court has persuasively held that any waiver of sovereign immunity may be found only "by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction."[27] Here, at least two other reasonable constructions are inconsistent with a complete waiver of sovereign immunity.

The plain meaning of subsection (d) of the EVS clearly provides for the waiver of *governmental immunity,* not sovereign immunity. We agree with the State Defendants that the use of the term governmental immunity in subsection (d) was intentional, and was used in order to distinguish that term from sovereign immunity. If the General Assembly intended the subsection (d) language to waive sovereign immunity completely, it would have used specific language to express that intent. In addition, subsection (d) of the EVS provides that the *owner* of the emergency vehicle cannot assert governmental immunity in certain situations. The owner of the emergency vehicle may be the State, another governmental entity with a different insurance plan, or a private party that provides contractual services to the State or another government entity. Here, the EVS contains no express, unambiguous waiver of sovereign immunity, and the text allows for another reasonable construction, namely, that no emergency vehicle owner may assert governmental immunity (at least to the extent insurance is available).[28]

After determining that sovereign immunity and governmental immunity are distinct terms, we address their difference. Although Delaware courts have not yet defined governmental immunity, other states have. Governmental immunity, which is derived from the doctrine of sovereign immunity, limits the imposition of tort liability on a governmental agency or

---

27. *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909); *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Alden v. Maine,* 527 U.S. 706, 727, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Raygor v. Regents of the*

*Univ. of Minn.,* 534 U.S. 533, 547, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002).

28. *Murray,* 213 U.S. at 171, 29 S.Ct. 458; *Edelman,* 415 U.S. at 673, 94 S.Ct. 1347; *Alden,* 527 U.S. at 727, 119 S.Ct. 2240; *Raygor,* 534 U.S. at 547, 122 S.Ct. 999.

unit.[29] Sovereign immunity, on the other hand, refers to the similar immunities that belong to the state.[30] Many state supreme courts have held that sovereign immunity is a defense that belongs to the state, while the defense of governmental immunity belongs to the agencies of the state.[31] Other state supreme courts distinguish sovereign and governmental immunity by referring to governmental immunity as the tort immunity of counties and municipalities and referring to sovereign immunity as the tort immunity of the State and state agencies.[32] Although these distinctions do not apply directly to the facts at bar, they do suggest that emergency vehicles owned by or independently contracted for by political subdivisions within the State or quasi governmental entities such as county paramedics, volunteer fire company, or ambulances, may not assert governmental immunity as a complete bar to claims made under the EVS.

The General Assembly had the distinction between sovereign and governmental immunity in mind when it enacted the EVS. The statute uses the phrase "owner" instead of "State." Many emergency vehicles are "owned" by private citizens, but are used for governmental purposes. The phrase: "The owner of such emergency vehicle may not assert the defense of governmental immunity," means that the owner may not assert the defense of governmental immunity, but that the State may still assert the defense of sovereign immunity to the extent insurance is not available in cases where it is the "owner" of the emergency vehicle.

■ We affirm recognizing that the trial judge's interpretation of governmental immunity, of course, has no bearing on any limitation on thresholds of monetary liability or any limitation on the extent to which sovereign immunity may have been waived by the State or its political subdivisions. It is, nonetheless, an interpretation entirely consistent with public policy that suggests that when the State or any of its political subdivisions make insurance available for the purpose of remedying harm caused by its emergency vehicles in an accident, then governmental immunity may not be asserted to bar a claim up to the limit of that coverage. In the context of 21 *Del. C.* § 4106(d), the trial judge's view is affirmed.

The legislative history of the State Insurance Program and the EVS suggests that subsection (d) of the EVS does not reflect any intent of the General Assembly

29. 57 AM. JUR. 2D *Municipal an State Tort Liability* § 10 (2003).

30. *Id.*

31. *See, e.g., Anderson v. City of Milwaukee,* 208 Wis.2d 18, 559 N.W.2d 563 (1997) (providing that sovereign immunity belongs to the state while governmental immunity is a defense that belongs to units of governments); *Shootman v. Department of Transp.,* 926 P.2d 1200, 1204 (Colo.1996) (providing that sovereign immunity refers to immunity of the state government whereas governmental immunity refers to immunity at all levels of government such as agencies or departments); *Ross v. Consumers Power Co.,* 420 Mich. 567, 363 N.W.2d 641, 653–54 (providing that sovereign immunity refers to status immunity which stems from the status of the sovereign and/or state, while governmental immunity is thought of as functional and is applicable only for claims arising from the exercise of governmental functions on behalf of the sovereign).

32. *See, e.g., Maryland–Nat'l Capital Park and Planning Comm'n v. Kranz,* 308 Md. 618, 624, 521 A.2d 729, 732 (Md.1987) (providing that the Maryland Court of Appeals uses the phrase governmental immunity when referring to the tort immunity of counties and municipalities and the phrase sovereign immunity when referring to the immunity of the State and state agencies); *Davis v. City of San Antonio,* 752 S.W.2d 518, 519–20 (Tex.1988) (providing that the immunity given to the municipality is called governmental immunity).

to waive sovereign immunity completely. In 1969, the General Assembly enacted the State Insurance Program. The purpose of that Program was to protect the public from wrongful actions of State officials and employees, by waiving the State's sovereign immunity up to the threshold of insurance coverage made available by the State.[33] The EVS, as noted by the trial judge, was enacted in 1978. At the time the EVS was enacted, the State Insurance Program already existed. Thus, it is fair to presume that the General Assembly was aware of the State Insurance Program when it enacted the EVS in 1978.[34]

Appellants' view that the language of subsection (d) of the EVS completely waives the State's sovereign immunity, conflicts with the policy of and would expand the liability that the State expressly limited, in the State Insurance Program. Appellants argue that subsection (d) of the later EVS completely waives the State's sovereign immunity through some form of indirect repeal of the limited exposure provision of the State Insurance Program in the case of emergency vehicle accidents. Appellants' indirect appeal argument is misplaced, because subsection (d) of the EVS deals only with the waiver of governmental immunity. It does not address the concept of sovereign immunity. If the General Assembly intends to waive the State's sovereign immunity in subsection (d), as Appellants' argue, it will have to do so expressly.

## V

For the foregoing reasons the decision of the Superior Court is AFFIRMED.

---

33. *Doe*, 499 A.2d at 1181.

34. *Id.* (considering this Court's logic in harmonizing the STC Act and the State Insurance Act).