## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DAVID D. CHRISTIANSON,      :

                             :     C.A. No. K20C-04-028 WLW

         Plaintiff,          :

                             :

     v.                         :

                             :

DART-DELAWARE TRANSIT     :

CORPORATION; JERRY HODGES, :

JOHN T. SISSON, CHARLES       :

MEGGINSON, JOHN SYRYLA,    :

BILL THATCHER,                :

                             :

         Defendant.       :

Submitted: August 24, 2020
Decided: November 24, 2020

## ORDER

Upon Defendants' Motion to Dismiss
Pursuant to Superior Court Civil Rule 12(b).
*Granted.*

David D. Christianson, Plaintiff *pro se*

Stacey X. Stewart, Esquire of the Department of Justice, Wilmington, Delaware; attorney for Defendants.

WITHAM, R.J.

The Defendant, Delaware Transit Corporation (hereafter "DTC"), an agency of the State of Delaware, and DTC employees Jerry Hodges, John T. Sisson, Charles Megginson, John Syryla, and Bill Thatcher (collectively "the defendants") bring this Motion to Dismiss pursuant to Superior Court Civil Rule 12(b) asserting lack of subject matter jurisdiction, failure to state a claim for which relief may be granted, and failure to perfect service. The Plaintiff, David Christianson (hereafter "Christianson"), responded to the motion. This Court has reviewed the pleadings and presentations of the parties. As the facts stand presently, and for the reasons explained below, this Court **GRANTS** Defendants' Motion to Dismiss for lack of subject matter jurisdiction and for insufficient service.

## Factual and Procedural History

Christianson, a *pro se* plaintiff, initiated this case after being terminated by DTC some five days before the end of the probationary period of his employment. Christianson was hired by DTC as an automotive technician on October 30, 2017, and on April 25, 2018, his employment was ended. No documentation of reprimand during Christianson's time of employment are present in the record other than Christianson's termination letter stating that he exhibited an "uncooperative attitude" and "fail[ed] to improve [his] work performance compared to [his] peers."[1]

Christianson's termination came after an incident involving Defendant Jerry Hodges (hereafter "Hodges"). Hodges is alleged to be the Assistant South District

---

[1] Plaintiff's Response at Ex. B.

2

Maintenance manager which this Court assumes to be Christianson's immediate supervisor.[2] Hodges called a meeting with several employees, among which Christianson was one. This meeting was in regards to the unspecified actions of other employees. It is especially noted that Christianson's complaint is devoid of facts establishing what actions of other employees would give rise to his termination. Christianson's complaint indicated that he was not party to these unspecified actions. Hodges encouraged the employees with whom he was meeting, including Christianson, to disclose "defaming information" concerning the other employees involved in the unspecified actions. Christianson had none to give and began to feel pressured by Hodges to make disparaging remarks regarding the other employees. Christianson observed Hodges become increasingly angry and frustrated with Christianson before Hodges ended the meeting.

Christianson also witnessed a poster displayed near areas of the DTC work facility that would be visible to all employees. The poster allegedly stated "your coworkers are not your friends, get your money and go home."[3]

On April 25, 2018, Christianson was terminated from his employment with DTC. Upon termination, Christianson sought an explanation from Hodges and was told "don't go there, or else I won't give you a recommendation."[4] During

---

[2]Plaintiff's Complaint at ¶ 6.

[3]*Id.* at ¶ 14.

[4]*Id.* at ¶ 16.

Christianson's probationary employment with DTC, he was paying union dues to the International Brotherhood of Electrical Workers (hereafter "IBEW"); however, because his termination occurred five days before the end of his probationary period, Christianson did not receive representation from the IBEW.

Christianson filed his complaint on April 24, 2020, alleging three counts: 1) Malicious Termination; 2) Deprivation of Representation, and 3) Embezzlement. The Delaware Department of Justice, representing DTC in this case, filed its Motion to Dismiss on July 2, 2020, and Christianson responded on August 18, 2020.

### Standard of Review

The Defendants and DTC argue for a Motion to Dismiss based on Superior Court Civil Rules 12(b)(1), (5), & (6). These Rules are lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim for which relief can be granted.[5] Each Rule requires this Court to adhere to specific standards of review when making a determination.

Rule 12(b)(1) demands that the Court dismiss any claim if the movant can show that the Court lacks jurisdiction over the claim.[6] Rule 12(b)(5) requires dismissal of a claim if that claim's service of process is insufficient as to the rules of civil procedure in the State of Delaware. In the State of Delaware, "any summons initiating a lawsuit against the State of Delaware or any state officer, must be served

---

[5]Superior Ct. Civ. R. 12(b).

[6]*Geo-Technology Associates, Inc. v. Capital Station Dover, LLC*, 2020 WL 2557139 at *2 (Del. Super. May 15, 2020).

upon the Attorney General, State Solicitor, or Chief Deputy Attorney General, in addition to the Defendants."[7] Service to the above listed individuals is necessary to properly complete service pursuant to 10 Del. C. § 3103(c), and failure to execute such service results in service not being perfected.[8]

Rule 12(b)(6) requires that the movant "bears the burden of demonstrating that 'under no set of facts which could be proven in support of its complaint would the plaintiff be entitled to relief.'"[9] When considering a 12(b)(6) Motion to Dismiss, this Court will accept all well-pleaded facts as true, even vague allegations if the allegations provide the opposing party notice of the claim; will make reasonable inferences as to these well-pleaded facts in favor of the party not moving to dismiss; and will dismiss only where the plaintiff would not be entitled to recovery based on any reasonably provable circumstances.[10] Finally, "conclusions will not be accepted as true without specific allegations of fact to support them."[11]

## Discussion

### I. Lack of Subject Matter Jurisdiction

DTC and the Defendants argue that this Court lacks subject matter jurisdiction

---

[7] *Wilson v. Metzger*, 2019 WL 166687 at *1 (Del. Super. Jan. 4, 2019).

[8] *Id.* at *2.

[9] *Geo-Technology Associates, Inc.*, 2020 WL 2557139 at *2 (citations omitted).

[10] *Id.*

[11] *Solomon v. Pathe Communications Corp.*, 672 A. 2d 35 at 38 (Del. 1996).

because, as agents of the State of Delaware, they have not waived sovereign immunity and the State Tort Claims Act bars the action.[12] DTC and the Defendants cite case law to support their assertion that failure to show both of these elements strips this Court of subject matter jurisdiction.

State sovereign immunity is a doctrine that prohibits suing the State unless the State has given its consent to be sued.[13] Delaware Courts have been reluctant in the past to apply this doctrine because it is one "which draws its strength from the notion that the State is outside the law."[14] This reluctance to apply the doctrine has been address by the General Assembly through revisions to the Delaware Code Annotated.[15]

The State Tort Claims Act, 10 Del. C. § 4001, codifies sovereign immunity by prohibiting civil liability against the State or any public officer or employee when 1) the offensive act was done during the performance of an official discretionary duty; 2) the act, while resulting in an offense, was done in good faith and in the belief that the public interest was being served; and 3) was done without gross or wanton

---

[12]Def.'s Motion to Dismiss at ¶ 5.

[13]*Doe v. Cates*, 499 A. 2d 1175 at 1176 (Del. 1985).

[14]*Id.* at 1177.

[15]*Id.* In *Cates*, the Delaware Supreme Court gave a thorough explanation behind the passage of 18 Del. C. § 6511, which takes away sovereign immunity as a defense if the risk or loss is covered by insurance, and 10 Del. C. § 4001, which spells out when sovereign immunity can be used against civil liability.

negligence.[16] The plaintiff must show each of these elements to overcome the State Tort Claims Act prohibitions, and "any reasonable doubts as to the proper construction of the statute should be resolved in favor of the State."[17]

The Delaware Supreme Court has held that the legislative intent of the State Tort Claims Act was not to find a waiver of sovereign immunity "in all cases where a ministerial act was performed with gross or wanton negligence or in bad faith."[18] The legislative purpose of the State Tort Claims act was to 1) codify common law principles to which the State of Delaware absolutely adhered; 2) discourage the chilling effect litigation would have on exercises of discretionary authority; and 3) limit, not abolish completely, the doctrine where gross or wanton negligence occurred or where discretionary authority was done in bad faith.[19]

DTC and the Defendants argue that Christianson has failed to meet the requirements showing that § 4001 does not apply to this situation. They argue that their alleged actions were done in accordance with their discretionary power as a State entity and as State employees, and, thus, protected by sovereign immunity. Furthermore, they assert that Christianson has made no specific attempts to show that DTC or the Defendants waived their defense of sovereign immunity. Finally, DTC

---

[16] 10 Del. C. § 4001.

[17] *Cates*, 499 A. 2d at 1180.

[18] *Id.*

[19] *Id.* at 1180 - 81.

has no insurance coverage for the claims alleged by Christianson, which further suggests that sovereign immunity is available as a defense.[20]

Christianson's claim hinges on the assertion that the State employees violated the duty of good faith and fair dealing in exercising their discretionary authority to terminate his employment within the probationary period. Christianson's complaint that the covenant of good faith and fair dealing (hereafter "the Covenant") was breached must show "the conduct of the employer...constitut[ed] 'an aspect of fraud, deceit, or misrepresentation."[21] Christianson asserts that the bad faith stems from his termination being based on "false, manufactured, and misleading information" and not adhering to the standards set by the employee handbook.[22] Christianson's assertions in his complaint, however, are not sufficient to raise a claim of bad faith and gross or wanton negligence by DTC and the Defendants on the basis of breach of the Covenant.

Christianson's complaint alludes to Hodges terminating Christianson during his probationary period after Hodges falsified Christianson's employment record for not participating in the sullying of other DTC employees, but such an inference cannot be made on the facts presented by the complaint. Courts are not obligated to

---

[20]DTC and the Defendants have provided an affidavit by Mr. Frederick Bailey attesting to the absence of insurance coverage for the type of liability alleged in the Complaint's Count 1. See Def.'s Motion to Dismiss at Ex. A.

[21]*E. I. DuPont de Nemours and Co. v. Pressman*, 679 A. 2d 436 at 440 (Del. 1996).

[22]Plaintiff's Complaint at ¶ 15.

8

accept as true conclusory statements in complaints that are not supported by some fact.[23] Christianson's complaint shows that he had a good employment record, that there was a heated altercation with Hodges, and then Christianson was terminated during his probationary period for failure to adhere to the code of conduct in the employee handbook. To conclude from the pleaded facts that this equates to falsification of his employment record in order to create a paper trail on which to justify Christianson's termination, would be a "'strained interpretation of the allegations proposed by the plaintiff.'"[24] Christianson's allegations point more to a supervisor who held some dislike, hatred, or ill will toward Christianson, and such emotions "alone, cannot be the basis for a cause of action for termination of an at-will employee."[25]

Finally, Christianson further argues that absence of insurance coverage for this type of liability should not shield the State from liability for wrongful termination because, "should all claims be determined actionable by insurance coverage alone, then all claims could be denied if the Defendants just decide to purchase no insurance at all."[26] Christianson's assertion that lack of insurance should not be an avenue on

---

[23]*Clouser v. Doherty*, 2017 WL 3947404 at *4 (Del. 2017). This point of civil procedure is further driven home by the U.S. Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, (2009), which stated that, to survive a motion to dismiss, the plaintiff's complaint must have "facial plausibility" from which the Court can draw "reasonable inferences."

[24]*Clouser*, 2017 WL 3947404 at *4 (citation omitted).

[25]*Pressman*, 679 A. 2d at 444.

[26]Plaintiff's Response at 3.

9

which DTC and the Defendants can pursue sovereign immunity as a defense is off point. The lack of insurance coverage is not construed as a waiver to sovereign immunity because "[s]uch an interpretation would expand the liability the State has agreed to under 18 Del. C. ch. 65, and therefore, would be inconsistent with the stated purpose and the title of the Tort Claims Act, limiting liability."[27]

## *II. Insufficient Service of Process*

DTC and the Defendants argue that Christianson failed to perfect service of process due to this action involving a State entity and State employees and not being served against the proper State officers. The proper procedure for service of process against the State is to serve the Attorney General, the State Solicitor, or the Chief Deputy Attorney General and all the Defendants.[28] Christianson, twice, makes an admission to improper service in his response to the Motion to Dismiss. Although this Court sympathizes with pro se parties, it cannot hold pro se parties to a lesser standard than it would a licensed attorney in a similar situation.

## *III. Failure to State a Claim on Which Relief Could be Granted*

DTC's and the Defendants' argument that Christianson failed to state a claim on which relief could be granted is deemed moot as Christianson failed to overcome the defendants' other two 12(b) arguments in favor of dismissal.

---

[27]*Cates*, 499 A. 2d at 1181.

[28]*Wilson*, 2019 WL 166687 at *1.

## Conclusion

**WHEREFORE**, because of the above stated reasons, Defendants' Motion to Dismiss for lack of subject matter jurisdiction and for insufficient service of process is hereby GRANTED.  Defendants' Motion to Dismiss for failure to state a claim on which relief may be granted is **MOOT**.

**IT IS SO ORDERED**.

/s/ *William L. Witham, Jr.*
Resident Judge

WLW/dmh